(No. 43716.—

PHYLLIS FIORITO *et al.*, Appellants, *vs.* THEODORE A. JONES, Director of Revenue, *et al.*, Appellees.

*Opinion filed June 24, 1971.*

EDWARD A. BERMAN, LEWIS W. SCHLIFKIN, DAVID P. SCHIPPERS, and SAMUEL J. BETAR, all of Chicago, for appellant.

SAMUEL H. SOLOMON, JAMES C. RENZINO, PAYNE and COOKE, all of Chicago, (STANLEY W. COOKE, of counsel,) for intervenors appellants.

WILLIAM J. SCOTT, Attorney General, of Springfield, (FRANCIS T. CROWE, HERMAN R. TAVINS and CALVIN C. CAMPBELL, Assistant Attorneys General), for appellees.

C. J. HARRINGTON, JR., JOHN P. SULLIVAN, both of Chicago, (EDWARD G. PROCTOR, of counsel,) for *amicus curiae* American National Bank and Trust Company.

DEFREES, FISKE, VOLAND, ALBERTS & HOFFMAN, of Chicago, (RICHARD E. VOLAND, EDWARD J. GRIFFIN and MARVIN S. HELFAND, of counsel,) for *amicus curiae* Tool & Die Institute, Greater Rockford Tool, Die & Precision Machining and American Metal Stamping Assoc., Chicago Division.

Mr. JUSTICE RYAN delivered the opinion of the court:

Plaintiffs in a class action sought to enjoin the collection of taxes under the 1967 amendments to Illinois Service Occupation Tax Act and the Illinois Service Use Tax Act. (Ill. Rev. Stat. 1967, ch. 120, par. 439.101 *et seq.* and par. 439.31 *et seq.*). The trial court held the 1967 amendments

unconstitutional and directed that the taxes collected under the Acts be impounded and held in a protest fund pending final disposition of the case. This court in *Fiorito* v. *Jones*, 39 Ill.2d 531, affirmed the decision of the trial court, held the amendments to be unconstitutional and remanded the case to the circuit court of Cook County for proceedings consistent with the views expressed in the opinion.

Further controversy arose in the trial court over the method of paying claims for refund. Plaintiffs contend that each claim should be paid in full since it represents an illegal tax collected under the unconstitutional 1967 amendments. This court, in holding the 1967 amendments unconstitutional, also held the repealing clause of said amendments void and declared the Service Occupation Tax Act and related Acts in full force and effect as they existed prior to the adoption of the amendments. (39 Ill.2d at 541.) The State contends that by virtue of this holding the prior Acts were never repealed and each claimant is liable to the State for the tax thereunder which must be computed and deducted from the amount of the claim for refund.

The prior Acts provided that the tax be computed on the *cost price* to the service man of the tangible personal property transferred as an incident to the sale of service. The 1967 amendments which were held unconstitutional provided that the tax be computed on the *gross receipts* received by the serviceman in the sale of service. (Ill. Rev. Stat. 1967, ch. 120, par. 439.33 (service use tax) and par. 439.103 (service occupation tax).) The gross receipts figure would include charges for labor as well as cost price plus mark up on items of personal property used.

Approximately $39,000,000 has accumulated in the fund held by the trustee appointed by the court. Approximately 43,000 persons have filed claims for refund representing in excess of 400,000 transactions. Total dollar value of the claims is in excess of $16,000,000. On a request by the trustee for instructions the trial court on August 24, 1970,

entered an order which provided in part as follows: "* * * the trustee is ordered and directed, on all claims on which there is no breakdown between parts and labor, to compute the amount of refund to each claimant on the basis that 50% of the tax was paid for labor, unless the claimant is able to show that the cost for labor that was performed was greater than 50% and in such cases, the refund should be computed on the basis of the increased percentage." The order further provided for a refund of an additional amount to all claimants representing the difference in the rate of tax under the prior Acts and the increased rate of tax under the unconstitutional 1967 amendments. The order also provided for the payment of interest on the refund from December 1, 1967, to and including the last day of the month in which the refund payment is made. Plaintiffs have appealed from that portion of the order which directed the trustee to compute the amount of the refund on the basis that 50% of the tax was paid for labor unless the claimant is able to show a greater percentage.

Plaintiffs through the lengthy arguments in the trial court and in this court have insisted that our prior opinion directed that the claims be paid in full. They contend that the trial court misinterpreted our opinion when it ordered that the refund be primarily based on the tax paid on labor only. It is the State's position that since this court's opinion had stated that the Acts as they existed prior to the amendments had never been repealed, a tax on parts used was due and owing to the State under these Acts and the claimants are only entitled to a refund of that portion of the total amount paid which represents a tax on the labor which was involved in the sale of service. Plaintiffs view the tax due under the prior Acts as a set off or counterclaim which the State should assert as a separate claim and be compelled to prove. They argue that the court's order has the effect of shifting the burden of proof from the State to the plaintiffs.

The trial court did not misinterpret the direction given

in our original opinion. Although plaintiffs assert that our opinion directed that each claim be paid in full we find nothing in the opinion that encourages such a conclusion. In the opinion we stated: "With regard to determining which members of the class are entitled to cash refunds, it is our opinion that the relevant policy expressed in the governing statutes, the Service Occupation and Use Tax Acts, must be followed." (39 Ill.2d 531 at 544.) We then specifically referred to section 17 of each Act. (pars. 439.117 and 439.47.) These sections, along with those immediately following, provide for the making of adjustments when payments of taxes are made under the Acts through a mistake of fact or an error of law. The sections provide for an administrative procedure which places the claimant in the role of the moving party who must carry the burden of establishing his right to a credit.

Although the procedure outlined in section 17 *et seq.* of each Act relates to an administrative procedure for a determination of credits to be given to the taxpayer, we see no reason why the same policy as reflected in these sections should not govern the procedure to be followed in judicially determining cash refunds. In *Harrison Sheet Steel Co.* v. *Lyons,* 15 Ill.2d 532, this court considered the question of refunds of amounts paid under the Retailers' Occupation Tax Act. At page 537 we stated: "No reason has been suggested why the basic policy that the legislature has thus expressed is not equally applicable whether the proceeding is an administrative one terminating in the issuance of a credit memorandum for use in the payment of future taxes, or a judicial one terminating in the refund of cash held under an injunction * * *." The same reasoning applies to the case now before us.

The circuit court in its order has adopted the basic policy expressed by the legislature in the Acts. A substantial amount of the money held in the fund represents taxes due to the State under the prior Acts. We are not here concerned

with distinct and separate taxes. We are here dealing with the question of how much tax does the claimant owe to the State of Illinois under the Service Occupation and Use Tax Acts for the period involved.

The plaintiffs argue that the trial court's order resulted in arbitrary treatment of all claims and claimants irrespective of the facts surounding each purchase of service. It is specifically provided in the order that the allocation of 50% of the tax to labor applies only to claims for which there is no breakdown between parts and labor. Also, even in cases where the claims did not have a breakdown between parts and labor, the order provides that the claimant has an opportunity to show that the cost for labor that was performed was greater than 50%. So as to claims in which there was a breakdown between parts and labor the formula has no application. The report of the trustee indicates that in a substantial portion of the dollar value of the claims such a breakdown was made. Also the order of the court does not require an arbitrary application of the 50% rule where a greater percentage can be proved. The order applies the 50% rule only in cases where there is no proof to establish the percentage of the tax attributable to labor. Although as shown later the complex factual picture did not admit of an accurate analysis of the ratio between parts and labor, the 50% allocation is not without foundation. The report of the trustee reflected that in certain classes of claims in the "repairman" classification the average ratio of parts to labor was 50%. Also the 50% ratio was agreed to by some of the larger dollar amount claimants who were not able to break down their claims. As discussed later in this opinion some inequalities may result in the determination of the amounts of refund. However, we cannot view the order of the court as being arbitrary and without foundation. It is a practical solution of the problem dictated by the complexities of the situation.

Not only is the procedure for which plaintiffs contend

not in keeping with the provisions of the Act and not in conformity with the directions in our previous opinion, but it also lacks the practical aspects of the solution afforded by the order of the court. If a 100% refund of all claims were made followed by the required filing of reports and assessment and payment of taxes due under the prior Acts there would be a further delay involving needless duplication of clerical and administrative functions. If the claimants' records are not sufficient for them to establish the amount of tax attributable to the parts involved in claiming their refund pursuant to the order of the court quite obviously substantial confusion would result if they were to attempt to file subsequent reports and make a self-assessment of the tax due under the prior Acts.

Plaintiffs urge that the order of the trial court violates section 1 of article IX of the Illinois constitution (uniformity provision) and the equal protection clause of the fourteenth amendment of the Federal constitution. Under the Acts prior to the amendments the class set apart for taxation included, with certain exceptions not material to this case, all servicemen who transferred personal property incident to performing their services. Under the 1967 amendments the class was narrowed and did not include certain groups the members of which were subject to the tax under the prior Acts. Presumably, no tax was paid under the 1967 amendments as to services performed by members of the excluded groups. Therefore the protest fund contains no money which represents the taxes on services performed by them. However, when the 1967 amendments were declared unconstitutional members of the excluded groups became liable for the taxes under the prior Acts. Plaintiffs see some unconstitutional discrimination against their class by virtue of the fact that the tax under the old Acts will be collected by a reduction in the refunds which they will receive, whereas the tax owed by members of the excluded groups will be collected in some other manner. Plaintiffs in-

sist that there must be uniformity in the assessment and collection of taxes and that the plan set forth in the court's order does not permit uniformity in the collection of taxes in the situation discussed. Plaintiffs also set forth several hypothetical cases wherein inequalities may develop under the application of the court's order.

The constitutional provision for uniformity does not call for mathematical equality. The requirement is satisfied if the intent is evident to adjust the burden with a reasonable degree of uniformity. A practical uniformity rather than an absolute one is the test. (*Apex Motor Fuel Co.* v. *Barrett,* 20 Ill.2d 395; *Crozer* v. *People ex rel. Hamburg,* 206 Ill. 464.) Also, this court stated in *Schreiber* v. *County of Cook,* 388 Ill. 297 at 303: "Absolute equality is impracticable in taxation and is not required by the equal protection clause of the constitution. Inequalities that result occasionally and incidentally in the application of a system that is not arbitrary in its classification, and not applied in a hostile and discriminatory manner, are not sufficient to defeat the tax. [Citations.] Mere inequities in the administration of the law violate no constitutional rights. [Citation.]" To the same effect see *Colgate* v. *Harvey,* 296 U.S. 404, 80 L. Ed. 299; *Maxwell* v. *Bugbee,* 250 U.S. 525, 63 L. Ed. 1124; *People* v. *Franklin National Ins. Co.,* 343 Ill. 336; *People* v. *O'Donnell,* 327 Ill. 474.

The fourth report of the trustee filed with the petition to the court for instructions discloses the magnitude of the problem of attempting to allocate the tax money held in the fund between labor and personal property. The report indicates there are approximately 1,000 different kinds of businesses that may have paid the tax under the 1967 amendments and each business may have a different ratio between the amount of labor and the parts used in the work performed. The trustee engaged the services of a consultant from the University of Illinois. A representative group of 1100 servicemen were selected and their tax returns were

processed through a computer to compare the taxes paid under the old Acts with those paid after the effective date of the 1967 amendments and again with those paid since the 1967 amendments were declared unconstitutional. The results were meaningless. The consultant advised the trustee that an opinion could not be formulated as to the ratio of labor to parts because of the spread of the ratio not only between businesses but also within each business due to variations in different areas of the State.

The trustee reported that many claimants were able to divide the tax between that attributed to labor and that attributed to parts. About 60% of the dollar amount of the claims filed were in the "repairman" class and about 85% of the dollar amount of these claims arose out of automobile repair transactions. Many of such claims reported the amount of the claims that were paid for tax on parts. An analysis of these indicated that the tax for labor in the automobile repair man category varied from 45% to 60% and the average was 50% of the total bill. The trustee further reported that some of the claimants' records indicate that the percentage of their claims attributable to labor is greater than 50% while in other classes the claimants had not been required to pay any tax on the labor performed and thus filed a claim only for the increases in the tax on personal property. Confronted with this situation the trustee made its recommendation upon which the court based its order.

Under these circumstances we cannot say that the order of the court violated the uniformity provision of section 1 of article IX of the Illinois constitution or the equal protection clause of the fourteenth amendment to the Federal constitution. The trustee under the direction of the court made every attempt to arrive at a formula whereby the money held in the protest fund would be divided between the claimant and the State according to their respective interests. Under the plan recommended and adopted by the court no doubt there will be situations in which certain

claimants will not be able to prove the allocation of the tax between parts and labor and will pay more taxes than they should. Of course, the converse is likewise so. This is not a plan free from all inequalities but it is a practical plan designed to insure as nearly as possible under the complexities of the situation an equitable distribution of the protest fund and uniformity in the collection of the taxes due to the State. We feel that a practical uniformity has been achieved. The order of the circuit court of Cook County will be affirmed and the cause is remanded to the circuit court of Cook County for further proceedings in conformance therewith.

*Affirmed and remanded.*