(No. 46244.—

JULIA HAGERTY, Appellee, v. GENERAL MOTORS CORPORATION *et al.*—(General Motors Corporation, Appellant.)

*Opinion filed Sept. 27, 1974.—Rehearing denied Nov. 27, 1974.*

Frank F. Fowle, Thomas D. Nyhan, and Robert C. Bonges, of Chicago (Pope, Ballard, Shepard & Fowle, and Ross L. Malone, of Detroit, Michigan, of counsel), for appellant.

L. Louis Karton, of Chicago, for appellee.

Arnold M. Flamm and Arthur T. Susman, of Chicago (Prins, Flamm & Susman, Ltd., of counsel), for *amicus curiae* Linda Adams.

McDermott, Will & Emery; Crowley, Barrett & Karaba; Arvey, Hodes, Costello & Burman; and Winston & Strawn, all of Chicago (Hamilton Smith, Edward W. Barrett, Herman Smith and John D. Bixler, of counsel), for *amici curiae* Jewel Companies, Inc., Osco Drug, Inc., Sears, Roebuck & Co., Dominick's Finer Foods, Inc., Walgreen Co., The Great Atlantic & Pacific Tea Co., and National Tea Co.

MR. JUSTICE SCHAEFER delivered the opinion of the court:

This case, like many others, involves problems that stem from the relationship between Illinois' basic "sales" tax—the Retailers' Occupation Tax Act—and other taxes designed to protect that basic tax from erosion. The complexity of this portion of the tax structure of the State of Illinois is due in large part to the view of the Constitution of 1870 that was expressed in a dictum in *Bachrach v. Nelson* (1932), 349 Ill. 579. (See *Turner v. Wright* (1957), 11 Ill.2d 161, and *Thorpe v. Mahin* (1969), 43 Ill.2d 36.) The complexity continues although the necessity for it no longer exists.

This case involves the basic Retailers' Occupation Tax Act (Ill. Rev. Stat. 1965, ch. 120, par. 440 *et seq.*) and its companion the Use Tax Act (Ill. Rev. Stat. 1965, ch. 120, par. 439.1 *et seq.*) as well as the Service Occupation Tax Act (Ill. Rev. Stat. 1965, ch. 120, par. 439.101 *et seq.*) and the accompanying Service Use Tax Act (Ill. Rev. Stat. 1965, ch. 120, par. 439.31 *et seq.*). A brief explanation of the operation of these taxes will assist in understanding the contentions of the parties.

The Retailers' Occupation Tax Act imposes a tax upon persons engaging in selling tangible personal property

at retail. The amount of the tax is computed as a specified percentage of the gross receipts of such sales at retail. (Ill. Rev. Stat. 1965, ch. 120, par. 441.) A "sale at retail" is any transfer for a valuable consideration of the ownership of or title to tangible personal property to a purchaser for use or consumption and not for resale. (Ill. Rev. Stat. 1965, ch. 120, par. 440.) The retailer is required to remit the tax to the Illinois Department of Revenue. Ill. Rev. Stat. 1965, ch. 120, par. 442.

The Use Tax Act complements the Retailers' Occupation Tax Act. (See *Turner v. Wright* (1957), 11 Ill.2d 161.) It imposes a tax, at the same rate as the retailers' occupation tax, upon the privilege of using in this State tangible personal property purchased at retail. (Ill. Rev. Stat. 1965, ch. 120, par. 439.3.) In the usual situation the tax is collected from the purchaser by the retailer, but to the extent that the retailer remits to the Department of Revenue the tax imposed by the Retailers' Occupation Tax Act with respect to the sale of the same property, he is not required to remit the tax imposed by the Use Tax Act. Ill. Rev. Stat. 1965, ch. 120, par. 439.9.

The Service Occupation Tax Act is intended to place servicemen, as nearly as possible, on a tax parity with retailers to the extent they transfer tangible personal property to the ultimate consumer. (See *Fiorito v. Jones* (1968), 39 Ill.2d 531, 536.) It does so by imposing a tax upon all persons engaged in the business of making sales of service. The amount of the tax is computed as a specified percentage of the cost price to the serviceman of all tangible personal property transferred by such serviceman as an incident to a sale of service. (Ill. Rev. Stat. 1965, ch. 120, par. 439.103.) Depending on the circumstances, the tax is either collected from the serviceman by his supplier, who then remits it to the Department of Revenue, or is remitted directly to the Department by the serviceman after the transfer of the property to a purchaser. Ill. Rev. Stat. 1965, ch. 120, par. 439.103.

The Service Use Tax Act complements the Service Occupation Tax Act. It imposes a tax, at the same rate as the service occupation tax, upon the privilege of using in this State real or tangible personal property acquired as an incident to the purchase of a service from a serviceman. (Ill. Rev. Stat. 1965, ch. 120, par. 439.33.) In the usual situation the tax is collected from the purchaser by the serviceman, but to the extent that he pays the tax imposed by the Service Occupation Tax Act with respect to the sale of service involving the incidental transfer by him of the same property, he is not required to remit the tax imposed by the Service Use Tax Act. Ill. Rev. Stat. 1965, ch. 120, par. 439.39.

On February 13, 1967, the plaintiff, Julia Hagerty, authorized the Cadillac Motor Car Division of the defendant General Motors Corporation (GM) to install certain parts in her automobile, and to perform certain repair work upon it, including lubrication service, changing the oil filter, adjusting the carburetor, realigning the wheels and replacing the spark plugs. In connection with that work she was charged a total of $16.26 for an oil filter, spark plugs and a condenser. The cost of the labor was $30.05. The bill given to her showed the following breakdown of the total charge of $46.96:

| | |
|---|---|
| Labor | $30.05 |
| Total Material | 16.26 |
| Sales Tax | .65 |
| Total Amount | $46.96 |

Thereafter on April 17, 1967, she filed this action alleging that GM has wrongfully charged her $.65 pursuant to the Use Tax Act instead of a lesser amount pursuant to the Service Use Tax Act. The relief sought was an injunction, an accounting and a refund of the alleged overpayment of taxes, and the action purported to be brought on behalf of all other customers of GM who were similarly situated.

GM's amended answer denied that it was a serviceman

under the Service Use Tax Act and the Service Occupation Tax Act. It alleged that its transaction fell within the provisions of the Use Tax Act and the Retailers' Occupation Tax Act, and that it had remitted to the State the amount due under those statutes. The amended answer also raised other affirmative defenses. The Director of the Department of Revenue and the Treasurer of the State of Illinois were added as defendants. GM then filed a motion to strike the class action allegations of the complaint and a motion to dismiss the action. On the basis of the pleadings before it, the trial court entered judgment in favor of the plaintiff for 33 cents, ordered the class action allegations of the complaint stricken, denied the plaintiff's request for an accounting, and ordered that if GM continued to collect taxes from its customers based upon the Use Tax Act and the Retailers' Occupation Tax Act, it must pay one-half of the amounts collected into a protest fund to be set up by the State Treasurer.

The Appellate Court, First District, reversed the judgment of the circuit court and remanded the cause for further proceedings. (14 Ill. App. 3d 33.) It held that if the plaintiff is determined to be a proper representative of the class she purports to represent, the class action allegations of the complaint should not have been stricken, but that the trial court erred in entering judgment for the plaintiff on the pleadings and in its determination of the amount of damages awarded to the plaintiff. We allowed GM's petition for leave to appeal.

The questions that concerned both courts relate to the plaintiff's right to recover and to maintain a class action. In order that a class action may be maintained, "all members of the class [must be] found to have a common interest in the questions involved and the results ***." (*Peoples Store of Roseland v. McKibbin* (1942), 379 Ill. 148, 152-53; also see *Fiorito v. Jones* (1968), 39 Ill.2d 531, 541-44; *Harrison Sheet Steel Co. v. Lyons* (1959), 15

Ill.2d 532, 537-38.) The *Peoples Store* case involved a suit challenging the applicability of the Retailers' Occupation Tax Act to sales of food by retailers to hospitals and similar institutions. The action was brought by two named plaintiffs, individually, and purportedly on behalf of all others who sold the same class of merchandise to the same character of institutions. In holding that a class action could not be maintained, the court said:

"In the instant cases all retailers of the State engaged in selling food supplies to institutions of the kind and character to which plaintiffs sold have an interest in having such sales exempted from the tax but the common interest stops there. A decision sustaining their view that no tax is due on such sales does not create any fund from which reimbursement can be made, *neither does it establish the existence of a right of recovery in every vendor.* Each must make proof as required by section 6 as amended, and in doing so he resorts to his own sales which are wholly independent and unrelated to the sales made by others engaged in the same business and selling to similar institutions." (Emphasis added.) 379 Ill. at 154.

The same is true in this case. Here, the question as to each purported class member is whether GM should have collected a use tax or a service use tax on his individual transaction. The answer to that question depends on whether that transaction was a sale at retail or a sale of service. As the appellate court pointed out, "Whether any particular sale constitutes a sale at retail or a sale of service depends upon the circumstances of the transaction." (14 Ill. App. 3d at 37.) It follows, as the appellate court also stated, that "*** a single businessman can be subject to both taxes, although not for the same transfer of tangible personal property, dependent upon the circumstances surrounding the contract of sale." 14 Ill. App. 3d at 37.

In order to determine which tax should have been imposed in a particular transaction, the facts of that transaction must be known. Consequently, a decision in this case sustaining the plaintiff's contention as to her transaction with GM would not establish a right of recovery in any other customer of GM who had work performed on his automobile and replacement parts installed therein. The required common interest of the purported class members in the questions involved is therefore lacking in this case, and the circuit court was correct in striking the class action allegations of the plaintiff's complaint.

The plaintiff contends that the appellate court erred in remanding the cause for evidence on her contract with GM. We disagree. The state of the pleadings at the time the trial court entered judgment was somewhat confused. In addition to GM's motion to strike the class action allegations of the complaint and to dismiss the action, GM had previously filed an amended answer. GM did not elect to stand on its motion to dismiss, and the entry of judgment precluded it from presenting evidence on its affirmative defenses to support the answer it had previously filed.

In this regard we should point out that one of the affirmative defenses raised by GM in its amended answer was that the tax collected by it from the plaintiff was paid to it voluntarily and without protest, and was then remitted to the State in accordance with the statutory requirements. The trial court properly regarded these facts as significant in terms of the availability of a class action, but they also have a bearing upon the right of the plaintiff to recover at all.

It has long been recognized that in the absence of statute, taxes paid voluntarily, though erroneously, cannot be recovered. (*S.A.S. Co. v. Kucharski* (1972), 53 Ill.2d 139, 142; *Snyderman v. Isaacs* (1964), 31 Ill.2d 192, 194; *Peoples Store of Roseland v. McKibbin* (1942), 379 Ill.

148, 152.) An exception to this rule was recognized in *Harrison Sheet Steel Co. v. Lyons* (1959), 15 Ill.2d 532, in order to prevent the unjust enrichment of a retailer who had received from the State a refund of taxes, the burden of which he had passed on to purchasers. In the present case there is no suggestion but that the plaintiff voluntarily paid the tax in question, and if GM remitted to the State the amount it collected from the plaintiff, as it asserts that it did, there is no element of unjust enrichment. We do not approve the appellate court's statement that:

> "If defendant collected excess taxes from its customers, it has received and has retained the excess money to which it is not entitled. The fact that defendant may have paid a similar amount of money to the State is of no importance when considering the rights and obligations between defendant and its customers. Any money defendant may have paid to the State was in discharge of its own obligations and does not affect the rights of plaintiff and the class. When defendant retained the tax collected from plaintiff, it was unjustly enriched to the extent to which the tax collected exceeded the amount of tax that it could rightfully collect." 14 Ill. App. 3d at 43.

This reasoning misapprehends the interrelation between the use tax and the retailers' occupation tax. (See *Turner v. Wright* (1957), 11 Ill.2d 161.) If GM erroneously paid a retailers' occupation tax to the State on the same transaction in which it erroneously collected a use tax from the plaintiff, it was not enriched at all, justly or unjustly. If there was unjust enrichment, it was the State that was enriched. (See *Snyderman v. Isaacs* (1964), 31 Ill.2d 192, 196.) The remedy pursued successfully in *Crane Construction Co. v. Symons Clamp & Manufacturing Co.* (1962), 25 Ill.2d 521, was available to the plaintiff in this case, but it was not pursued.

The judgment of the appellate court is affirmed in

part and reversed in part, and the cause is remanded to the circuit court for further proceedings consistent with the views expressed in this opinion.

*Affirmed in part and reversed in part and remanded, with directions.*