(No. 47824.—
(No. 47928.—

LINDA ADAMS, Appellant, v. JEWEL COMPANIES, INC., *et al.,* Appellees.—PHYLLIS SUSMAN, Appellant, v. DOMINICK'S FINER FOODS, INC., *et al.,* Appellees.—PHYLLIS SUSMAN, Appellant and Cross--Appellee, v. WALGREEN COMPANY *et al.,* Appellees (Walgreen Company, Cross-Appellant).

*Opinion filed March 29, 1976.*

GOLDENHERSH, J., dissenting.

No. 47824.—

Prins, Flamm & Susman, Ltd., of Chicago (Arnold M. Flamm, Arthur T. Susman, and Robert D. Allison, of counsel), for appellants.

McDermott, Will & Emery, of Chicago (Hamilton Smith and Edward V. Washington, Jr., of counsel), for appellees Jewel Companies, Inc. and Osco Drug, Inc.

Crowley, Barrett & Karaba, of Chicago (Edward W. Barrett and Bruce M. Friedman, of counsel), for appellee Dominick's Finer Foods, Inc.

Arvey, Hodes, Costello & Burman, of Chicago (Herman Smith, of counsel), for appellee and cross-appellant Walgreen Co.

William J. Scott, Attorney General, of Chicago (Paul J. Bargiel and Imelda R. Terrazino, Assistant Attorneys General, of counsel), for appellees the Department of Revenue *et al.*

No. 47928.—

MR. JUSTICE KLUCZYNSKI delivered the opinion of the court:

We granted direct appeal pursuant to Supreme Court Rule 302(b) from three judgments of the circuit court of Cook County. These consolidated appeals involve questions pertaining to a consumer's right to proceed against a retailer for an overcharge in taxes remitted by the retailer to the Department of Revenue (hereinafter Department), the validity of class actions under the circumstances presented, plaintiffs' right to seek an injunction to compel retailer-defendants to pursue tax refund claims before the Department and the propriety of assessing interest against the retailers.

These actions arise out of this court's opinion in *Dick's Vending Service, Inc. v. Department of Revenue,* 53 Ill.2d 375, which was filed October 2, 1972. In that decision we held that the State cigarette use tax is not to be included in the tax base for purposes of computations of the retailers' occupation tax. Shortly after the opinion in *Dick's Vending* was filed, but prior to the denial of the petition for rehearing, the various plaintiffs in these appeals filed their respective actions.

Cause No. 47824 consists of two actions, in one of which Jewel Companies, Inc., and Osco Drug, Inc., were named as defendants by Linda Adams. She acted in her individual capacity and as a "representative of a class consisting of all persons who purchased cigarettes from either of the defendants in the State of Illinois and who were required to pay Illinois Use Tax or Municipal or County Retailers' Occupation Tax calculated *** upon the full advertised price of said cigarettes without first deducting therefrom the amount of cigarette use tax payable by said purchaser." The other action involved in cause No. 47824 was filed by Phyllis Susman in the same capacity against Dominick's Finer Foods, Inc. The allegations of the Susman complaint were comparable to the Adams' action. Both alleged that the respective defendants had calculated the amounts of use and retailers' occupation taxes ultimately borne by the cigarette purchaser upon a basis which improperly included the Illinois cigarette use tax. Additional counts in the complaints further alleged that in Chicago subsequent to January 1, 1972, defendants collected taxes on cigarettes whose tax base included the 5 cent per package home rule tax imposed by this municipality in addition to the aforesaid tax base. (See *S. Bloom, Inc. v. Korshak,* 52 Ill.2d 56.) These causes proceeded separately before the Honorable Walter P. Dahl, a judge of the circuit court of Cook County, and were consolidated on appeal.

In cause No. 47928 plaintiff, Phyllis Susman, filed an action against Walgreen Company basically repeating the allegations in the Jewel-Osco and Dominick's complaints with the exception that this complaint did not contain a specific count relating to the computation of taxes which included the Chicago home rule tax. The complaint was amended delimiting plaintiff's class to "all persons who purchased cigarettes from the defendant (other than persons who purchased only a single package of cigarettes

in any single transaction) in the State of Illinois" and who paid tax calculated on an improper tax base. The cause was assigned to the Honorable Nathan Cohen.

Each of the complaints alleged that the respective State (Ill. Rev. Stat. 1971, ch. 120, par. 440 *et seq.*), municipal (Ill. Rev. Stat. 1971, ch. 24, par. 8—11—1), or county (Ill. Rev. Stat. 1971, ch. 34, par. 409.1) retailers' occupation taxes were assessed at a total rate of 5%. Plaintiffs also stated that there was in force and effect a statute imposing a tax upon the privilege of using tangible personal property more commonly referred to as the Use Tax Act (Ill. Rev. Stat. 1971, ch. 120, par. 439.1 *et seq.*). The interrelationship of these taxes was noted in *Hagerty v. General Motors Corp.*, 59 Ill.2d 52, 55. The ultimate result of this interrelationship is to shift the tax burden to the consumer by allowing the retailer to recoup its payment for retailers' occupation tax by withholding remittance of an equal amount of proceeds collected under the Use Tax Act. See *Johnson v. Marshall Field and Co.*, 57 Ill.2d 272, 276-77.

The complaints also alleged that under their respective statutes cigarette retailers had to pay a cigarette tax at a specified amount for each cigarette sold (Ill. Rev. Stat. 1971, ch. 120, par. 453.1 *et seq.*) and under the Cigarette Use Tax Act a tax was imposed on the privilege of using cigarettes at the same rate as the cigarette tax (Ill. Rev. Stat. 1971, ch. 120, par. 453.31 *et seq.*). Plaintiffs contended that these taxes are actually prepaid to the State by the cigarette distributor but, in effect, under section 3 of the Cigarette Use Tax Act (ch. 120, par. 453.33) the eventual burden imposed by these taxes is shifted to the retail purchaser.

To reiterate, basically each plaintiff maintained that in purchasing cigarettes they were required to pay State use tax and to reimburse the retailer for municipal and county retailers' occupation tax. The amount of tax imposed on the purchaser, however, was calculated by including within

the tax base the amount of the cigarette use tax payable by the purchaser as part of the selling price of the cigarettes. This amounted to a $1.20 increase in the tax base for each carton of cigarettes.

The records establish that prior to December 1, 1971, Rule 52 of the Department denied retailers the right to deduct the cigarette tax from the selling price of the cigarettes for the determination of retailers' occupation taxes. Rule 52 was amended on the aforesaid date to allow deduction of the cigarette tax or cigarette use tax in arriving at the net selling price for determination of the retailers' occupation tax. Apparently such rule modification was not claimed to be mandatory. Rule 52, as amended, recognized the pending action in the *Dick's Vending* case as well as *Hradek v. Korshak,* No. 66 Ch 7491, a class action in the circuit court of Cook County which purportedly involved the challenge to the determination of said taxes based on an inclusion of the cigarette use tax in the retail selling price for a period from January 1, 1967, to December 1, 1971.

The Department and its director were either made a third-party defendant or additional defendant in each of these actions. Ill. Rev. Stat. 1971, ch. 110, par. 25.

Plaintiffs amended their complaints to include as relief sought the requirement that each retailer-defendant file claims for tax refunds with the Department and pursue collection of the tax overcharge. Each defendant did file such claims as a protective measure for those periods of time not barred by the statute of limitations for advancing such claims (Ill. Rev. Stat. 1971, ch. 120, par. 445). In seeking to amend their complaints plaintiffs asserted that prior to August 17, 1971, they could neither proceed directly against the retailers for tax overcharges nor file claims with the Department for refunds because they did not remit the tax and thus lacked standing. (Ch. 120, par. 445; see also *Snyderman v. Isaacs,* 31 Ill.2d 192, 196; *Youhas v. Ice,* 56 Ill.2d 497, 502.) But defendants also

apparently lacked standing to seek refunds, for they had not borne the tax burden which is necessary in order to seek a refund from the Department. (Ch. 120, par. 445.) Thus plaintiffs for the benefit of their classes sought to have the trial courts direct defendants to diligently pursue tax refund claims with the Department for these tax overcharges. It was urged by plaintiffs that defendants could pay their own funds into the circuit court and simultaneously the Department would deposit an equal amount with the court representing a refund to defendants of the tax overcharges. Plaintiffs now suggest an escrow arrangement be devised to fulfill the above-mentioned requirements. Answers by the Department to the interrogatories indicated that defendants' refund claims were denied and said denials had been protested but not yet resolved because of the litigation.

In the Jewel-Osco cases the trial court entered final orders finding that between December 5, 1971, and February 3, 1973, Jewel had collected nearly $500,000 in tax overcharges from its customers which were not remitted to the Department, but Jewel was granted summary judgment as to the amount it had remitted. The trial court determined that the net benefits to be realized by each member of the class in the Jewel case were outweighed by administrative costs in distributing these unremitted amounts. The court held the class action was improper in the Jewel matter, and it directed Jewel to turn over the unremitted excess taxes to a financial institution as trustee for the Department, and the court discharged Jewel from liability including any claim for interest. Osco had been granted summary judgment after it was determined all excessive taxes it had collected had been remitted to the Department. Finally, in its orders the trial court denied plaintiff's motions to require Jewel and Osco to participate in refund hearings before the Department. Plaintiff's attorneys in Jewel were allowed fees for their services in an amount not yet determined by the trial

court. That portion of the judgment has not been challenged, although the trial court found there was no just reason to delay an appeal. There is no challenge made to the individual judgment for $5.10 entered on behalf of Linda Adams, which represented her amount of tax overcharge. Plaintiff in Jewel-Osco filed notice of appeal from portions of the judgments adverse to her contentions.

In the Dominick's case it was determined that the tax overcharges were terminated by Dominick's in May 1973. The trial court held that, since this defendant remitted all sums to the Department which allegedly had been wrongfully collected, summary judgment would be granted to Dominick's. Plaintiff's motion to require this defendant to proceed with refund claims was denied. Plaintiff appeals from this judgment.

In the Walgreen case the trial court found the matter to be a proper class action. It further found that plaintiff had no cause of action against Walgreen for excessive tax charges remitted to the Department, and it discharged Walgreen from liability to this extent. However, Walgreen had retained excessive taxes of about $161,000 collected between January 1, 1972, and November 30, 1972. These funds had been deposited with the court, and the court assessed $1,539.95 in interest payable to the fund. A trustee was appointed to administer this fund. Plaintiff appealed from the portion of the judgment dismissing her complaint as to excessive taxes remitted to the Department and disallowing interest in any amount exceeding that allowed. Walgreen filed a notice of cross-appeal challenging the trial court's finding of the propriety of the class action and the awarding of any interest.

Plaintiffs concede that any cause of action to recover excessive taxes directly from the retailer which had been remitted to the Department prior to August 17, 1971, is precluded by this court's decision in *Hagerty v. General Motors Corp.*, 59 Ill.2d 52. That decision held that, absent a statute or unjust enrichment by a seller, a customer who

erroneously but voluntarily pays an excessive tax cannot proceed against the seller for a refund of the overpayment when said taxes have been remitted to the State. However, plaintiffs rely upon a recent amendment to section 3 of the Use Tax Act (Ill. Rev. Stat. 1971, ch. 120, par. 439.3) in their attempt to predicate liability directly on the retailer-defendants for remitted excessive taxes. That statute in relevant part was amended by Public Act 77—1020, and it provided:

> "If any seller collects use tax measured by receipts which are not subject to use tax, or if any seller, in collecting use tax measured by receipts which are subject to tax under this Act, collects more from the purchaser than the amount of the use tax on the transaction is, the purchaser shall have a legal right to claim a refund of such amount from the seller. However, if such amount is not refunded to the purchaser for any reason, the seller is liable to pay such amount to the Department. This paragraph does not apply to an amount collected by the seller as use tax on receipts which are subject to tax under this Act as long as such collection is made in compliance with the tax collection brackets prescribed by the Department in its Rules and Regulations." Ill. Rev. Stat. 1971, ch. 120, par. 439.3, effective August 17, 1971.

The corporate defendants basically construe this amendment to permit a purchaser a direct cause of action against the retailer for excessive tax charges only when the retailer has not remitted such excessive amounts to the Department and is therefore unjustly enriched. Plaintiffs concede that the amendment was designed for this purpose, but they also claim there is no reason to believe that unjust enrichment was the sole purpose of the amendment. Moreover, plaintiffs say the plain language of the statute permits them a direct cause of action against a retailer for excessive tax collections even if the retailer has remitted said amounts to the Department.

We are unpersuaded by plaintiffs' interpretation. This court has recognized that statutory interpretations by administrative agencies express an informed source for

ascertaining the legislative intent. (*Johnson v. Marshall Field and Co.*, 57 Ill.2d 272, 278.) In this regard the Department has stated:

> "*Unjust Enrichment from Over-Collecting Tax—Civil Penalty:* 7. The law now provides that if any seller collects an amount (however designated) which purports to reimburse such seller for retailers' occupation tax liability measured by receipts which are not subject to retailers' occupation tax, or if any seller, in collecting an amount (however designated) which purports to reimburse such seller for retailers' occupation tax liability measured by receipts which are subject to tax under the Act, collects more tax from the purchaser than the seller's retailers' occupation tax liability on the transaction is, the purchaser shall have a legal right to claim a refund of such amount from such seller. However, if such amount is not refunded to the purchaser for any reason, the seller is liable to pay such amount to the Department. These provisions do not apply as long as such collection is made in a taxable transaction in compliance with the tax collection brackets prescribed by the Department in its rules and regulations. Similar provisions to prevent unjust enrichment have been placed by the Legislature in the Use Tax Act, the Service Occupation Tax Act, the Service Use Tax Act and The Hotel Operators' Occupation Tax Act." 1 CCH State Tax Reporter (Ill.) par. 63—212, December 27, 1971.

The Department has not taken a position that the legislative amendment encompasses any situation not involving unjust enrichment to the retailer.

Moreover, that portion of the amendment precluding application of its provisions if the tax collection "is made in compliance with the tax collection brackets prescribed by the Department in its Rules and Regulations" would appear to suggest that a purchaser does not enjoy an unqualified right of action against a retailer merely because the latter may have collected excessive taxes from the purchaser. In this regard we note the Department did not apparently modify its official position until April 1973 with the issuance of a Revenue Bulletin revising Rule 52 in

compliance with the decision in the *Dick's Vending* case.

We are of the opinion that the amendment at issue was a codification of prior decisions of this court later summarized in *Hagerty v. General Motors Corp.* relating to a retailer's liability for collection of excessive tax charges. And under the circumstances of those cases the statute does not permit a direct action against the retailer by its purchasers.

The defendants in the Jewel and Walgreen cases urge the impropriety of class actions under the circumstances of their respective cases. Since the trial court did not pass upon the validity of the class action in the Dominick's case, that defendant makes no answer to plaintiffs' argument. Similarly, the trial court in granting summary judgment to Osco, when it was disclosed that Osco had remitted all tax overcollections to the Department, did not pass upon the issue of the correctness of a class action.

Basically, Jewel suggests that a class action in this case is improper because such litigation is not worthwhile to any member of plaintiff's class. Based on a stipulation contained in the Jewel record between the parties, Jewel says the average claimant will receive about $4 if the claimant smoked 1.83 packages of cigarettes a day and all were purchased from Jewel during the period in question. These figures were derived from statistics ascertainable from *Hradek v. Korshak,* to which we have previously alluded. Plaintiffs' brief has conceded the limited individual recovery and has said each recovery is not likely to exceed $10. This amount is derived from plaintiffs' claim that the tax overcharge amounted to 6 cents per carton and 8½ cents per carton if Chicago's home rule cigarette tax was included in the tax base. In addition this stipulation included itemization of administrative expenses incurred in *Hradek v. Korshak* totaling nearly $270,000 to process 281,147 claims. These costs did not include attorneys' fees or expenses in connection with making payments to class members.

Jewel also asserts that the judicial burden in supervising a class action would be immense and that inconvenience and cost upon Jewel personnel in distribution of claim forms and in providing information would occur. Walgreen argues there are not common questions of law and fact among the members of the class; that a requisite community of interest is absent because there is no common fund; and that a class action is unmanageable for several of the reasons advanced by Jewel.

In response to these arguments plaintiffs say that, while the number of class members is not predictable with "any great precision," their number is not so large as to render the class action unmanageable; that individual notice to class members is not a problem because "it is conceded that the names of none of the class members are known or readily ascertainable" and that notice by publication is sufficient; that the total amount of damages can be computed from remitted tax collections; and that the overcharge per carton was the same for each individual customer depending on the applicability of Chicago's home rule tax. All parties to these appeals agree that guidelines for determination of the propriety of a class action have judicially developed and have not been legislatively determined.

This court has recognized, and we adhere to the view, that the advantages inherent in a class action are to vindicate the rights of numerous claimants in one action when individual actions might be impracticable. (*Smyth v. Kaspar American State Bank,* 9 Ill.2d 27, 44.) Necessary prerequisites to maintenance of such action are the existence of common questions which dominate the controversy and pertain to each class member and an interest in a common result. (*Hagerty v. General Motors Corp.,* 59 Ill.2d 52, 57; *Harrison Sheet Steel Co. v. Lyons,* 15 Ill.2d 532, 538.) The fact that a class action is complex in nature or the number of claims is substantial may be anticipated in many class actions. (*E.g., Fiorito v. Jones,*

48 Ill.2d 566, 568, 573-74.) But we recognize that in the Federal system the vehicle of class action relief has been criticized for varying reasons. *City of Philadelphia v. American Oil Co.* (D.N.J. 1971), 53 F.R.D. 45, 72-73; *Free World Foreign Cars, Inc., v. Alpha Romeo* (S.D.N.Y. 1972), 55 F.R.D. 26, 30; *In re Hotel Telephone Charges* (9th Cir. 1974), 500 F.2d 86, 90-92.

Plaintiffs and members of these classes paid their taxes voluntarily despite provisions in the Revenue Act (see *Snyderman v. Isaacs,* 31 Ill.2d 192) and proper judicial procedures (see *Crane Construction Co. v. Symons Clamp & Manufacturing Co.,* 25 Ill.2d 521) which would have safeguarded their status. In *Hagerty v. General Motors Corp.,* 59 Ill.2d 52, 59, we remarked that the fact taxes are voluntarily paid and remitted to the State is significant in determining if a class action could be brought. And this latter factor has a bearing on Osco and Dominick's, which remitted their tax proceeds to the State.

Additionally, in the present cases there can be no dispute there are a potentially vast number of unidentified individuals in the classes who will submit claims that lack objective corroboration. Indicative of the situation is the stipulation that Jewel sold approximately 74,000,000 packages of cigarettes on which use tax was determined on an improper basis after December 5, 1971. Twenty-four percent of these cigarettes were sold in Chicago, thereby indicating that the tax would be greater because this municipality's home rule tax was considered in the base amount in determining the use tax. It is also agreed that the refunds to any claimant will be quite minimal. While plaintiffs suggest that administrative costs would not be overburdensome, we are not inclined to discount the preliminary costs incurred in *Hradek v. Korshak.* Finally, these appeals do not present a situation wherein denial of class action status will result in the unjust enrichment of a private individual or business entity. The combined additional circumstances further render these consolidated

appeals substantially distinct from other cases in which the procedural device of a class action was utilized, and they do not persuade that there should be a deviation from the well-settled principle of law in this State that, in the absence of a statute, taxes voluntarily paid cannot be recovered even if such payment was erroneous. We therefore hold that the class actions in these cases were improper.

We recognize that this holding allows the State to retain amounts of tax monies that were not statutorily authorized. This result has occurred in other instances involving invalid tax procedures. (*Hagerty v. General Motors Corp.*, 59 Ill.2d 52-60; see also *Consolidated Distilled Products, Inc. v. Mahin*, 56 Ill.2d 110.) However, as previously noted, plaintiffs had available to them the necessary procedures by which their claims could have been advanced, yet they were not utilized.

Since we have determined that the class actions are improper and the plaintiffs have voluntarily paid their taxes, consideration of plaintiffs' suggestion for establishment of a refund procedure contrary to that statutorily provided is not necessary. Moreover, there is no reason to consider a claim for the imposition of interest upon Jewel and Walgreen, which held the excess tax collections without remitting the funds to the Department, particularly in view of the fact that the State does not seek to recover interest from either defendant for their failure to remit tax collections.

Accordingly, the judgments of the circuit court in cause No. 47824 dismissing the Osco, Dominick's and Jewel actions to the extent that the excess taxes were remitted to the Department, and those portions of the judgment in the Jewel case which denied the propriety of the class action, refused to assess interest against Jewel and discharged it from liability upon remittance of excess taxes are affirmed. The cause is remanded for the entry of an order releasing to the Department the funds remaining

after the award of attorneys' fees, costs and expenses. The judgment of the circuit court in cause No. 47928 awarding interest against Walgreen is vacated, and its determination that a class action was proper is reversed. Its judgment discharging Walgreen from liability for funds remitted to the Department is affirmed. The cause is remanded for further proceedings not inconsistent with the views herein expressed.

*47824 — Affirmed and remanded,*
*with directions.*
*47928 — Affirmed in part, reversed*
*in part and vacated in part and*
*remanded, with directions.*

MR. JUSTICE GOLDENHERSH, dissenting:

I dissent. I do not agree with the majority that the amendment to section 3 of the Use Tax Act (Ill. Rev. Stat. 1971, ch. 120, par. 439.3) effected by Public Act 77—1020 "was a codification of prior decisions of this court later summarized in *Hagerty v. General Motors Corp.,* [59 Ill.2d 52,] relating to a retailer's liability for collection of excessive tax charges" (63 Ill.2d at 346), or that payment to the Department served to defeat the purchasers' claims for refund from the sellers of the excess use tax collected.

Public Act 77—1020 amended section 3 of the Use Tax Act by adding the following provision:

"If any seller collects use tax measured by receipts which are not subject to use tax, or if any seller, in collecting use tax measured by receipts which are subject to tax under this Act, collects more from the purchaser than the amount of the use tax on the transaction is, the purchaser shall have a legal right to claim a refund of such amount from the seller. However, if such amount is not refunded to the purchaser for any reason, the seller is liable to pay such amount to the Department. This paragraph does not apply to an amount collected by the seller as use tax on receipts which are subject to tax under this Act as long as such collection is made in compliance

> with the tax collection brackets prescribed by the Department in its Rules and Regulations." Laws of 1971, at 1904-05; Ill. Rev. Stat. 1971, ch. 120, par. 439.3, effective August 17, 1971.

This amendment in simple concise language gives a purchaser "a legal right to claim a refund" from a seller who has collected use tax in an amount greater than was due except when the overcharge occurs as the result of the "tax collection brackets prescribed by the Department \*\*\*." The statute does not provide that payment to the Department of excess sums collected by the seller serves to bar the "legal right to claim a refund" specifically created by its terms.

*Hagerty* is authority for the proposition "that in the absence of statute, taxes paid voluntarily, though erroneously, cannot be recovered." (59 Ill.2d 52, 59.) Here, by reason of the amendment of section 3 of the Use Tax Act there is no "absence of statute," but rather a presence of statute that expressly creates a "legal right to claim a refund" of excess taxes "voluntarily, though erroneously, paid."

An examination of the decisions "summarized in *Hagerty*" fails to reveal a basis for the majority's holding. *Harrison Sheet Steel Co. v. Lyons,* 15 Ill.2d 532, permitted an action by a purchaser to prevent the unjust enrichment of a seller who had obtained a refund. In *Snydermann v. Isaacs,* 31 Ill.2d 192, following this court's holding the tax invalid, a lessee sought to maintain an action to recover the tax paid to a lessor of personal property. The court held that under the general rule that "without legislative authorization voluntary tax payments can not be recovered" (31 Ill.2d 192, 196) the plaintiff had no statutory right to recover the taxes remitted by his lessor.

In *Crane Construction Co. v. Symons Clamp & Manufacturing Co.,* 25 Ill.2d 521, involving the same type of tax as *Snyderman,* the plaintiff sought to enjoin the defendant from paying over the tax unless such payment was made in compliance with the act relating to the

payment of monies to the State under protest (Ill. Rev. Stat. 1961, ch. 127, par. 172) and to enjoin the State Treasurer from paying the monies thus collected into any fund other than the protest fund. The court held that "plaintiff has followed an appropriate method for litigating questions which it has a right to have determined." (25 Ill.2d 521, 528.) Clearly the purpose of enacting the amendment embodied in Public Act 77–1020 was to provide the purchaser "a legal right to claim a refund" from the seller, and it is difficult to understand how this provision can be construed to be a "codification" of the foregoing decisions.

The majority finds it significant that "The Department has not taken a position that the legislative amendment encompasses any situation not involving unjust enrichment to the retailer." (63 Ill.2d 345.) In what manner the Department would become involved in determining whether payment of the excess tax bars an action by the purchaser against the seller, the majority fails to explain. It is so obvious that the issue presented here is beyond the scope of the Department's authority that no further comment is necessary.

Had the General Assembly intended that the payment of the tax to the Department serve to defeat the purchaser's "legal right to claim a refund" it would and could easily have so stated. The Use Tax Act provides the method by which defendants could have obtained refunds from the Department, and indeed, the record shows that claims for refund were in fact filed. The majority's construction of the statute has effected a distortion of its provisions and by judicial legislation has added a bar to the purchaser's "legal right to claim a refund."

The majority has enumerated the prerequisites and inherent advantages of a class action (63 Ill.2d at 347), all of which are admittedly here present. The conclusion that this is, nevertheless, not properly a class action appears to be based on (1) the erroneous con-

clusion that despite the amendment effected by Public Act 77—1020 plaintiffs have no right to recover taxes erroneously but voluntarily paid, (2) some vague principle of fireside equity that, since only the State will be enriched unjustly, no harm is done, and peripherally (3) the conclusion, unsupported in the record, that the class is somehow unmanageable. The two cases cited for the first proposition are not in point, and no authority is cited for the other two, for the obvious reason, I submit, that there is none.

This record shows beyond question that the defendants Jewel and Walgreen had collected and were holding $661,000 of taxes which except for these actions would probably have been retained in the corporate coffers. The cases presented a single legal and factual issue, not even contested by the defendants, and present a classic example of a situation where, absent a class action, the individuals who paid the excess taxes are denied relief. The circuit court is vested with power to determine classes and subclasses, and the only requirement for class membership is proof of having purchased cigarettes from the defendants during the period in question. Defendant Jewel issues identification cards to customers utilizing its check-cashing services (see *Heidelberger v. Jewel Companies, Inc.,* 57 Ill.2d 87), and unquestionably there are other records of probative value such as defendant Walgreen's prescription files. These are indicia of potential membership in a class or subclass, and the possibility that proof might be difficult is not a valid reason to summarily award the excess tax to the State.