GULF TRANSPORT, INC., Plaintiff-Appellant, *v.* ALAN J. DIXON, Defendant-Appellee.

Fourth District   No. 4—82—0175

Opinion filed November 4, 1982.—Rehearing denied December 6, 1982.

12

Gillespie, Cadigan & Gillespie, of Springfield (Patrick J. Cadigan, of counsel), for appellant.

Tyrone C. Fahner, Attorney General, of Springfield (Patricia Rosen, Assistant Attorney General, of counsel), for appellee.

PRESIDING JUSTICE GREEN delivered the opinion of the court:

Plaintiff, Gulf Transport, Inc., appeals a judgment of the circuit court of Sangamon County entered March 1, 1981, affirming an administrative review, a decision of defendant, the Secretary of State, levying an assessment for additional registration fees for the licensing of buses operated by plaintiff in Illinois for the years 1976, 1977 and 1978 in the total sum of $44,567.87, including interest and allowed auditor's expenses.

Plaintiff does not dispute that regulations enacted by defendant and reciprocal agreements entered into by defendant with other States purport to justify the assessment. Rather, plaintiff asserts the foregoing are void as to it because they are beyond the power granted to defendant by the Illinois Vehicle Code (Ill. Rev. Stat. 1979, ch. 95½, par. 1—100 et seq.). Plaintiff also asserts that the assessment places an undue burden on interstate commerce and that defendant is estopped from making the assessment.

Plaintiff is a nonresident corporation operating a fleet of buses and based in the State of Mississippi. For the years in question, plaintiff, in registering its buses with defendant, paid defendant fees based upon the full amount that would be required to register its entire fleet in this State reduced by a factor determined by the ratio of miles driven in the State to all of the miles driven. Defendant then issued to plaintiff the number of license plates which, if paid for at the full statutory rate, it would have been entitled to receive for the amount of fees actually paid. Certain decals were furnished in an amount equal to the number of remaining vehicles in plaintiff's fleet. The disputed assessment arises because buses upon which plaintiff had placed decals and not license plates were used by it to make charter trips for which the buses were driven from a place of keeping in Missouri to places in Illinois where they took on passengers, carried them to various places all within Illinois, returned the passengers to their place of departure in Illinois, and returned to Missouri. All but two of the buses made only one such trip per year, and none made more than two such trips in any year. By the terms of section 3—402(A) of the Code (Ill. Rev. Stat. 1979, ch. 95½, par. 3—402(A))

these movements were "intrastate commerce." That section includes within the definition of that phrase "any act of transportation which includes or completes a pickup within Illinois for delivery within Illinois." That section defines "interstate commerce" as transportation between States or passing through more than one State "and which is not 'intrastate.' "

Plaintiff contends that under sections 3—402.1 and 3—402(B) of the Code (Ill. Rev. Stat. 1979, ch. 95½, pars. 3—402.1, 3—402(B)) it was entitled to make these trips without incurring additional fee liability. Defendant denies that the above sections give plaintiff that right and asserts plaintiff was required to pay such fees for the intrastate trips of the buses in question that it would have been required to pay as a domestic carrier without the aid of any proportionment of Illinois miles to miles driven in other States. Defendant relies on section 3—402(B)(1) of the Act which states in part:

"Every nonresident, including any foreign corporation carrying on business within this State and owning and regularly operating in such business any motor vehicle, trailer or semi-trailer within this State in intrastate commerce, shall be required to register each such vehicle and pay the same fees therefor as is required with reference to like vehicles owned by residents of this State." (Ill. Rev. Stat. 1979, ch. 95½, par. 3—402(B)(1).)

The parties do not dispute that if defendant is correct, the assessment was properly computed.

Defendant maintains that section 3—402(B)(2)(c) and (d) was applicable to the 1976 assessment and section 3—402(B)(3) was applicable to the 1977 and 1978 assessments. It asserts section 3—402.1 applies only to fleets having a "base jurisdiction" in this State and is, therefore, not applicable to plaintiff. "Base jurisdiction" is defined by section 3—400 of the Code (Ill. Rev. Stat. 1979, ch. 95½, par. 3—400) as "where the registrant has an established place of business, where operational records of the fleet are maintained and where mileage is accrued by the fleet." Special provision is made for an entity having several bases of jurisdiction when it has several fleets. The parties agree plaintiff has no "base jurisdiction" in Illinois.

Section 3—402.1 is entitled "Proportional registration." It begins by saying that "[a]ny owner or rental owner engaged in operating a fleet of apportionable vehicles in this state and one or more other States may, in lieu of registration" under other provisions of the Code, register the vehicles under that section, obtaining an apportionment factor based upon the relationship of miles driven in Illinois in

the preceding year to total miles driven in that year, and obtain proper registration for each vehicle in the fleet by paying a fee based upon the full amount that would otherwise be required to register the fleet reduced by multiplying that sum by the apportionment factor. The section further provides that upon payment of the fees, the Secretary "shall, when this state is the base jurisdiction, issue" to the owner appropriate evidence of registration. The section then states: "Vehicles registered under the provision of this section shall be considered fully licensed and properly registered in Illinois for any type of movement or operation."

■■ Plaintiff takes the position that it is entitled to licensing for all of its fleet for any "type of movement or operation" including one statutorily classified as "intrastate" because the section speaks of applying to "[a]ny owner" operating a fleet in this and other States and plaintiff meets that requirement. Defendant responds that the section refers to issuance of evidence of registration only to fleets having a "base jurisdiction" here and the grant of operating authority set forth in the section is limited to vehicles registered under the provisions of the section. The section is obviously ambiguous. Because of the interpretation given it by the Secretary over a period of time, we hold the section to be limited to fleets having a "base jurisdiction" in Illinois. (*Adams v. Jewel Companies, Inc.* (1976), 63 Ill. 2d 336, 348 N.E.2d 161.) The section does not apply to plaintiff.

■■ The method of registration used by plaintiff for the year 1976 does appear to be that provided for in section 3—402(B)(2)(c). Section 3—402(B) is entitled "Reciprocity." Section 3—402(B)(1) concerns a type of vehicle registration based upon what has been called "residence reciprocity" (Ill. Ann. Stat., ch. 95½, par. 3—402, Source Comment, at 166 (Smith-Hurd 1971)) and appears not to be applicable here because it does not involve payment of fees in this State but arises from a certificate given by the Secretary. Section 3—402(B)(2), on the other hand refers to registration of a fleet on a *pro rata* basis among the States. This type of registration has been said to be based on apportionment reciprocity. (Ill. Ann. Stat., ch. 95½, par. 3—402, Source Comment, at 167 (Smith-Hurd 1971).) Section 3—402(B)(2)(c) speaks of the right to operate a fleet interstate without other registration if the fleet has been registered with the Secretary in accordance with an agreement concurred in by him and based on factors stated in the disjunctive which include those actually applied here for the year 1976. Section 3—402(B)(2) makes no mention of operations in intrastate commerce by vehicles registered thereunder. Thus plaintiff gained no rights under this section to engage in intrastate commerce

without payment of further license fees and rules which prohibited it from doing so were not beyond the power of the Secretary. The Secretary could properly make an assessment for a license for each bus which operated, in the manner shown, in Illinois in 1976 without a valid registration plate on the bus. The 1976 assessment was not contrary to statutory mandate.

The evidence showed a uniform reciprocal agreement which had been entered into by the Secretary at such time as to have been in force for plaintiff's licensing for 1977 and 1978. The Secretary maintains plaintiff's payment of fees for those years was made under this agreement and the agreement was authorized by section 3—402(B)(3) of the Act. Section 3—402 (B)(3)(c) provides for the apportionment of fleets for licensing purposes based upon many of the same factors as set forth in section 3—402(B)(2)(c) and also sets forth the power and duty of the Secretary concerning these agreements in much more detail than does section 3—402(B)(2)(c). Because of the foregoing we agree that the Secretary purported to act under section 3—402(b)(3) in entering into the agreement.

Section 73 of the agreement provided in part: "[t]he reciprocity granted pursuant to this article shall permit the interstate operation of *a* commercial vehicle and intrastate *operation* which is *incidental* to *a* trip of such vehicle involving interstate commerce." (Emphasis added.) Rules of the Secretary seemed to be in conformity with the agreement when they provided that, where, as here, a commercial vehicle is driven in Illinois as part of an apportioned fleet but without Illinois license plates on the vehicle, it can operate in any of the following intrastate movements but no combination thereof:

"(a) Interstate movements in the normal course of operations and such intrastate cargo or freight on such unit may not constitute more than 40% of the entire cargo or freight of the vehicle conducting such movement;

(b) All of the cargo or freight on the vehicle consists of cargo or freight which has an origin or ultimate destination outside of Illinois;

(c) Cargo or freight may be added in Illinois on a vehicle which was brought into Illinois for delivery to another point in Illinois or beyond provided that such carrier retains 60% of his interstate cargo on the vehicle at the time the freight is picked up and such carrier is limited to only one intrastate movement on said vehicle."

The concept of both the agreement and the rules is that intrastate movements may be made by vehicles without license plates issued by

this State under certain circumstances when the intrastate aspect of the movement is incidental to the interstate aspect of the same movement. Plaintiff maintains these provisions are inconsistent with the provisions of section 3—402(B)(3)(d), which state:

"Such agreements or arrangements shall also provide that vehicles being operated in intrastate commerce in Illinois shall comply with the registration and licensing laws of this State, except that vehicles which are part of an apportioned fleet may conduct an intrastate operation incidental to their interstate operations."

Plaintiff maintains that by using the words "may conduct *an* intrastate operation *incidental* to *their* interstate *operations*" (emphasis added), the legislation focuses not upon the intrastate aspect of a movement being incidental to the interstate aspect of the movement, as to the agreement and rules, but focuses upon a particular intrastate operation being incidental to the interstate operations (plural) of the fleet. Thus, under plaintiff's theory, the legislation would require the agreement to permit plaintiff to have made the trip here without further assessment because these trips were clearly incidental to the total interstate operations of plaintiff in Illinois.

■ The legislature could have been more precise and a substantial argument supports plaintiff's interpretation. However, once again, we defer the interpretation given by the Secretary over a period of time and construe the statute in the manner the Secretary has. (*Adams.*) We hold the provisions of the agreement and rule to be valid and determine that plaintiff's assessments for the years 1977 and 1978 were not contra to the legislative mandate to the Secretary.

In considering plaintiff's argument that the assessment imposed against it denied it of due process and was a burden on interstate commerce, we must recognize that the statutory distinction between commerce which is "interstate" and that which is "intrastate" is not controlling. Here, even though the passengers who rode the buses for which the assessment was levied both entered the buses and were discharged from them in Illinois without having left the State, the operation of the buses was in interstate commerce. (See *Complete Auto Transit, Inc. v. Brady* (1977), 430 U.S. 274, 51 L. Ed. 2d 326, 97 S. Ct. 1076.) We must also recognize that we are not dealing with an assessment against plaintiff for isolated use of vehicles for charter trips in Illinois but an assessment for additional fees to be charged pursuant to a complicated scheme for taxing plaintiff for the use of Illinois roads. An essential element of the scheme for each of the years was an arrangement whereby the total miles driven in Illinois bore heavily

on the total amount of fees charged.

■ When a State imposes a tax upon engaging in activity which is in interstate commerce, the tax violates the due process rights of the entity engaging in the activity and places an undue burden on interstate commerce if there is not a reasonable relationship between the tax imposed and the benefits conferred. (*Evansville-Vanderburgh Airport Authority District v. Delta Airlines* (1972), 405 U.S. 707, 31 L. Ed. 2d 620, 92 S. Ct. 1349; *Wisconsin v. J. C. Penney Co.* (1940), 311 U.S. 435, 85 L. Ed. 267, 61 S. Ct. 246.) Plaintiff points out that in each of the three years in question, the extra assessment imposed because of the use of the interstate charter buses greatly exceeded the gross revenue from that phase of the operation of the fleet. However, no showing was made that plaintiff's total revenue from Illinois operations was substantially affected by the total charges imposed for the use of Illinois roads. No showing was made that the total charges were not a reasonable amount for the benefits incurred. No showing was made that the charges were substantially greater in total for plaintiff than they would have been for a similarly situated domestic carrier. We agree with the trial court that plaintiff was not deprived of due process nor was interstate commerce unduly burdened.

■ Finally, plaintiff maintains the Secretary is estopped from charging extra fees for the runs by the unlicensed buses because its officers did not know unlicensed buses were not permitted to make this type of trip and the Secretary had previously failed to complain of similar practices although audits had been made. Only in very exceptional circumstances will the State be estopped when the public revenue is involved. (*People ex rel. Scott v. Chicago Thoroughbred Enterprises, Inc.* (1973), 56 Ill. 2d 210, 306 N.E.2d 7.) We need not decide whether such circumstances existed here because evidence was presented that instructions given by the Secretary clearly showed that under the Secretary's regulations these buses had no authority to make these runs. The administrative agency making the decision appealed could properly have concluded plaintiff's agents knew of the regulation or in the exercise of reasonable care should have known. In either event, the elements of the limited type of estoppel claimed would not have existed.

Our affirmance is for the reasons stated.

Affirmed.

TRAPP and LEWIS, JJ., concur.