Robert D. **BULLOCK**, Comptroller of Public Accounts, Appellant,

v.

**FIRESTONE TIRE AND RUBBER COMPANY,** Appellee.

No. 12633.

Court of Civil Appeals of Texas, Austin.

Jan. 25, 1978.

Rehearing Denied Feb. 8, 1978.

John L. Hill, Atty. Gen., Myra A. McDaniel, Asst. Atty. Gen., Austin, for appellant.

Joe R. Greenhill, Jr., Stubbeman, McRae, Sealy, Laughlin & Browder, Austin, for appellee.

O'QUINN, Justice.

Robert D. Bullock, Comptroller of Public Accounts, appearing through the Attorney General, appeals from judgment of district court of Travis County awarding Firestone Tire and Rubber Company recovery of $79,-616.33 in taxes, with penalties and interest, paid on new shock absorbers and their installation by Firestone on automobiles of its customers.

We will reverse judgment of the trial court and render judgment that Firestone take nothing by its suit to recover the taxes.

Firestone brought this suit under authority of Article 20.10(H), Title 122A, Taxation-General, V.A.T.S., claiming illegal assessment of the taxes, under the contention that Firestone qualifies as "lump-sum repairman" pursuant to Article 20.01(T), in that replacement of shock absorbers is a repair service involving necessary and incidental incorporation of tangible personal property belonging to Firestone into the customer's automobile.

The position of the Comptroller is that installation of shock absorbers is performed to achieve sale of shock absorbers, and that the sales tax is due on sale price of the absorbers charged to the customer. The Comptroller also contends that charge for the shock absorber properly should be stated separately from cost of labor for installation, failing in which the tax becomes due on the combined cost.

The suit was tried before the court on stipulated facts. Firestone operates approximately one hundred retail stores in Texas, engaged primarily in selling tires and, secondarily, "related automobile accessories." About half of the shock absorbers sold by Firestone during the tax period of 1970 through 1973 were purchased locally from independent suppliers. Firestone instructed its stores to pay the sales tax directly to the suppliers at the time of purchase.

The remaining one-half of absorbers Firestone purchased for delivery to its automo-

bile supply warehouses, for ultimate delivery either to independent Firestone dealers or to the Firestone retail stores. The shock absorbers in this class were purchased under a "resale certificate," authorized under Articles 20.021(F) and (G). This relieved the seller from paying the sales tax on property purchased for the purpose of reselling in the regular course of business, or because the purchaser was unable to ascertain whether the article would be resold or used for some other purpose.

The shock absorbers acquired under the latter method were installed in the "repair shop area" of the retail stores where general service and maintenance work was done. It was stipulated that to repair faulty or worn-out absorbers is impractical, and for that reason they are replaced with new "shocks." Installation requires hoisting the automobile above the floor of the shop to permit attaching the front shock absorbers to the A-frame section of the automobile, usually by three screws. Rear shock absorbers are attached to the differential in the same manner, by use of an air wrench.

The shock absorbers, thus installed, it was stipulated, become ". . . physically incorporated into the automobile, thereby helping the automobile to be restored to its original condition." Significance of this stipulation will be examined below in discussion of the Comptroller's Rule No. 95–0.-09A.

Firestone did not collect sales and use taxes from the customer when shock absorbers were installed on the automobile of a customer on the lump sum price charged for both labor and material; nor was a tax collected on the price representing material alone. Firestone instead either paid the tax to the local supplier on purchasing the shock absorbers, or paid the tax directly to the state, based on cost to Firestone, when Firestone gave a resale certificate at the time of purchase.

The record shows that Firestone followed this procedure under the belief that Firestone was a "repairman" under definition of the term in Article 20.01(T)(1):

"Contractor or Repairman. 'Contractor' or 'Repairman' shall mean any person who performs any repair services upon tangible personal property . . . who, as a *necessary and incidental* part of performing such services, incorporates tangible personal property *belonging to him* into the property being so repaired and improved. Contractor or repairman shall be considered to be the consumer of such tangible personal property furnished by him and incorporated into the property of his customer . . .

(1) The above provision shall apply only if the contract between the person performing the services and the person receiving them contains a lump sum price covering both the performance of the services and the furnishing of the *necessary incidental material*." (Emphasis added)

Under belief that in following this procedure it was acting as a repairman within the meaning of the statute, Firestone paid the sales and use tax on shock absorbers as a consumer. The Comptroller insists that Firestone did not thereby qualify as a repairman and a consumer of the property, but was a retailer and therefore liable for payment of the tax. Since Firestone charged a lump sum rather than separate its charges for labor, the Comptroller contends it was proper to assess a tax on the total figure charged the customer.

The single point of error urged in behalf of the Comptroller is that the trial court erred as a matter of law in holding that Firestone was a repairman within the statutory definition. The parties have joined issue on this question alone. The question to be decided is whether Firestone incorporated the shock absorbers into the automobile as a necessary and incidental part of performing repair services in order to qualify as a "repairman." No Texas court has considered and passed on this point, and no traceable pattern of decision appears to run through all, or even many, of the cases from other jurisdictions. See 68 Am.Jur.2d *Sales and Use Taxes*, sec. 92, p. 38 (1973).

We find in decisions by the Supreme Court of Alabama guidelines we consider logical and well-reasoned from facts and law closely resembling the principles involved in this appeal. The Alabama court in 1937 compared (a) use of new automobile parts, accessories, tires, batteries and the like in *refitting* of automobiles and (b) *consumption* of material and supplies, such as paints, lubricants, or minor supplies consumed in the rendition of service or labor for the customer. *Doby v. State Tax Commission*, 234 Ala. 150, 174 So. 233 (1937). In the latter situation, where tangibles were said to be *consumed*, the materials and supplies the court said were furnished as an incident to the service and therefore treated as part of the service. But in the first situation of *refitting* automobiles with batteries, tires, parts and accessories, the parts and equipment passed substantially intact to the customer and were installed in place in the repaired automobile for the use of the customer. 174 So. 236.

The court's language in *Doby*, that the supplies must be furnished as an "incident" to the service, is noticeably similar to the language of Article 20.01(T) requiring the property to pass as a "necessary and incidental" part of the repair before the tangible escapes taxation. Consonant with these concepts is Comptroller Rule No. 95–0.09A which construes Article 20.01(T). The Rule states, "A repairman is any person who restores tangible personal property to its original condition and who, in performing such repairs, incorporates tangible personal property belonging to him into the property being repaired." The property thus incorporated in the process of repair, so that it escapes taxation, is defined later in the Rule as "consumable supplies and equipment," which are "physically incorporated into the property of the customer."

Subsequent to decision in *Doby*, the Alabama court reaffirmed the legal principles there stated in another tax case involving a similar problem. *Cody v. State Tax Commission*, 235 Ala. 47, 177 So. 146 (1937). In the later decision the court stated, ". . . when the operator of an automobile repair shop sells an article or *part* for a car, it is a retail sale, and the tax must be paid by him, *though he also installs the part* in the car." The court held that ". . . when the shop operator uses and *consumes material* in repair work and reconditioning cars of his own or for others, or uses parts in reconditioning his own secondhand cars for sale, he is in that respect a consumer, not a retailer, and the tax is upon the sale to him, since there is no sale by him." (Emphasis added) 177 So. 148.

The rational distinction between the two types of transactions, tangibles that are used in *refitting* operations and tangibles *consumed* in repairing operations, which the court considered in *Cody*, may be found reasonably embodied in the scheme of the Texas sales and use tax statutes. Article 20.01(L)(3)(g) excludes from the sales price, on which the tax is based, "the amount charged for labor or services rendered in installing . . . the tangible personal property sold." It is clear from this statute, *first*, not all refitting operations in which the part is physically attached or installed were intended to be "repairs," since the statute anticipates imposition of a sales tax, and, *second* sale of an article or part for an automobile could be subject to the sales tax even though the repair shop operator installs the part in the car, as under the facts of *Cody*.

The Comptroller's Ruling states that the property must be "physically incorporated into" the subject, obviously a stricter requirement than mere "installation." It follows that "property physically incorporated" would be the equivalent of "supplies and material consumed" described in *Cody*, in contradistinction to the simple physical attachment involved in installation which results in passing parts and equipment "substantially intact to the consumer," in the language of *Doby*. This solution is strengthened further by the fact that the Ruling defines the property escaping taxation as "consumable."

As noted earlier, the parties stipulated that by installing the shock absorbers, Firestone "physically incorporated them

into the automobile." The court is bound by the intent of the Legislature as found in the statute, and it must be assumed that all parts of the statute have meaning and purpose and that the Legislature did not intend to do a vain and foolish thing by including certain portions of the Act. For the court to hold that installation by Firestone of the shock absorbers was the type of physical incorporation envisioned by the Legislature in passing Article 20.01(T) would encompass virtually every "installation" as being "physical incorporation" in the nature of "repair," a result rendering meaningless and ineffectual Article 20.01(L)(3)(g) which excludes from the sales price the amount charged for installation.

We conclude that the installation or attaching of shock absorbers was not a process or transaction under the facts of this case placing Firestone in the category of "repairman" under Article 20.01(T), and that the trial court erred in so holding. The judgment of the trial court is reversed, and judgment is rendered that Firestone take nothing by its suit for tax refund.

Reversed and Rendered.