**FIRESTONE TIRE AND RUBBER COMPANY, Petitioner,**

v.

**Robert D. BULLOCK, Comptroller, Respondent.**

No. B–7427.

Supreme Court of Texas.

Oct. 18, 1978.

Rehearing Denied Nov. 22, 1978.

Stubbeman, McRae, Sealy, Laughlin & Browder, Joe R. Greenhill, Jr., Austin, for petitioner.

John L. Hill, Atty. Gen., Myra A. McDaniel, Asst. Atty. Gen., Austin, for respondent.

CHADICK, Justice.

Petitioner, Firestone Tire and Rubber Company, instituted suit as authorized by Tex.Tax.-Gen.Ann. art. 20.10(H)(1) (1969),[1] against respondent, Robert D. Bullock, in his capacity as Comptroller of Public Accounts of Texas, for recovery of judgment refunding sales and use taxes alleged to have been illegally determined and collected by Bullock.

Along with its primary business of selling automobile tires, Firestone installed shock absorbers in customer automobiles on a lump-sum price basis which included the price of the parts and the price of the labor. As a result of such installations, Firestone's liability for collection and remittance to the Comptroller of the sales tax imposed by Article 20.02 turns upon whether Firestone qualified as a lump-sum repairman under Article 20.01(T)(1) and regulations promulgated by the Comptroller, Ruling No. 95–0.-098. The parties stipulated[2] all facts produced at the trial. The trial court found that installation of shock absorbers was a necessary and incidental part of repair service Firestone performed for customers; and that in performing such service Firestone incorporated shock absorbers owned by it into customer automobiles under repair. On such stipulated findings Firestone was adjudged a lump-sum repairman and awarded a recovery of $79,616.33 in accordance with the stipulation. The Court of Civil Appeals concluded that as a matter of law, under the stipulated facts, Firestone was not a statutory lump-sum repairman, reversed the trial court judgment and rendered judgment that Firestone take noth-

1. The Limited Sales, Excise and Use Tax Act is divided into several articles, Tex.Tax.-Gen.Ann. art. 20.01 through art. 20.17 (1969). Reference will be made to specific articles in the Act when appropriate.

2. The stipulation instrument does not recite or otherwise indicate the agreement was intended to convert this controversy into an agreed case as contemplated by Tex.R.Civ.P. 263.

ing. 561 S.W.2d 596. The judgment of the Court of Civil Appeals is reversed and the judgment of the trial court affirmed.

A sales tax is imposed by Article 20.02 upon the retail sale of taxable items. In a normal consumer purchase of goods, the sales tax is added to the purchase price of the item and collected from the purchaser by the retailer. The retailer is then required to remit the sales tax to the state. However, when a repairman performs work for a lump-sum, supplying both parts and labor, the consumer for whom the work is performed is not liable for the sales tax. Rather, under Article 20.01(T) the repairman is deemed the consumer of the goods and is liable for the sales tax upon the items of tangible personal property which are incorporated into his work product. *See* Tracy, Annual Survey of Texas Law, Taxation, 28 Sw.L.J. 340, 344 (1974).

Firestone paid a retail sales tax on approximately one-half of the shock absorbers in question at the time it bought them at retail from local suppliers. The remainder were bought by Firestone in its capacity as a wholesaler and taxes were paid to the Comptroller on these as they were disposed of through its repair shops. Firestone did not sell shock absorbers over the counter at retail. It disposed of them by a lump-sum price installation in customer vehicles. Firestone's lump-sum price for a shock absorber installation job included all the cost of material and labor. The Comptroller assessed and collected an additional sales tax on Firestone's installation jobs by treating an installation job as a retail sale and the total price of the installation job as taxable. Firestone paid the additional tax under protest and brought the instant suit for a refund. At stake in this action is the difference between the amount of taxes Firestone has already paid to retailers and directly to the Comptroller and the amount the Comptroller found to be due by treating a Firestone's lump-sum installation job as a retail sale of shock absorbers.

■ Article 20.01(T) provides in pertinent part:

"Contractor or repairman" shall mean any person who performs any repair services upon tangible personal property or who performs any improvement upon real estate, and who, as a necessary and incidental part of performing such services, incorporates tangible personal property belonging to him into the property being so repaired or improved. Contractor or repairman shall be considered to be the consumer of such tangible personal property furnished by him and incorporated into the property of his customer, for all of the purposes of this Chapter.

(1) The above provision shall apply only if the contract between the person performing the services and the person receiving them contains a lump-sum price covering both performance of the services and the furnishing of the necessary incidental material.[3]

■ Firestone argues that installation of shock absorbers was necessary and incidental to its repair of automobiles as found by the trial court, and the Comptroller argues that installation was merely incidental to the sale of shock absorbers, as found by the intermediate court. Firestone and the Comptroller join issue on whether installation of shock absorbers, as shown by this record, was secondary to automobile repair work performed by Firestone. The courts of this state have not heretofore had occasion to consider the issue. However, there are a number of cases from other jurisdictions which discuss similar types of business

---

**3.** The Comptroller's definition of a repairman at the time of audit is set out in Tex.Comptroller's Ruling No. 95–0.09: "Repairman. A repairman is any person who restores tangible personal property to its original condition and who, in performing such repairs, incorporates tangible personal property belonging to him into the property being repaired. . . ." However, it should be noted that an adminis-

trative interpretation is valid only insofar as it is consistent with the statutory definition and will not be effective to expand or to contract the language of the statute. *Social Security Bd. v. Nierotko,* 327 U.S. 358, 368, 66 S.Ct. 637, 90 L.Ed. 718 (1946); *Utah Hotel Co. v. Industrial Commission,* 107 Utah 24, 151 P.2d 467, 471 (Utah 1944).

activity and shed some light on the problem. Because these out-of-state cases do not construe statutory terminology similar to that in the Texas statutes, their instructive value is limited.[4] Accordingly, the factual situation here is carefully reviewed to determine the effect of Article 20.01(T) as a case of first impression in Texas.

Two mounting screws at the bottom end and one at the top are used to attach a shock absorber to an automobile. Replacement is effected at Firestone shops by mechanically lifting the vehicle above the floor to give adequate work room, detaching the mounting screws, replacing the old shock absorber with a new and securing it by inserting and tightening the mounting screws with an air wrench. The Comptroller insists that when replacement or installation of a part or accessory requires little skill, and without changing its form it may be installed with relative ease by an unskilled person, an agreement to replace or install the item at a lump-sum price is primarily a sale of the item and replacement or installation is incidental and secondary.[5] It appears that experience, special skill and knowledge are negligible factors in the installation of shock absorbers and we agree

with the Comptroller's contention and the Court of Civil Appeals finding that in performing a simple shock absorber installation job Firestone does not come within the statutory definition of a repairman.

However, in this case some Firestone customers brought automobiles to its shops for general repair work and shock absorbers were replaced as a part of such general repair.[6] Customers also brought in vehicles that did not ride smoothly or with tires wearing unevenly and instructed Firestone to correct such malfunctions. It may be inferred from the stipulations that the shop operator in these instances was expected to rely upon experience and exercise skill and judgment in determining needed correction and furnishing necessary repair service.[7] It may also be inferred that replacement of shock absorbers would not be the full extent of repair in many of these transactions. In instances where work other than replacement of shock absorbers was performed, replacement of shock absorbers could well be necessary and incidental to the repair service performed.

From the factual record it may reasonably be determined that replacement and

---

**4.** *Hagerty v. General Motors Corp.*, 59 Ill.2d 52, 319 N.E.2d 5 (1974); *Pierce v. Pacini*, 127 Ill. App.2d 1, 261 N.E.2d 515 (1970); *Commonwealth v. Pennsylvania Heat and Power Co.*, 333 Pa. 46, 3 A.2d 412 (Pa.1939); *Cody v. State*, 235 Ala. 47, 177 So. 146 (1937); *Doby v. State*, 234 Ala. 150, 174 So. 233 (1937).

**5.** The Alabama court in *Cody v. State, supra* at Note 4 construed the Alabama Sales Tax Act saying: ". . . when the operator of an automobile repair shop sells an article or part for a car, it is a retail sale, and the tax must be paid by him, though he also installs the part in the car. . . . When the shop operator uses and consumes material in repair work and reconditioning cars of his own or for others, or uses parts in reconditioning his own second-hand cars for sale, he is in that respect a consumer, not a retailer, and the tax is upon the sale to him, since there is no sale by him."

**6.** In paragraph 15 of the stipulation instrument the parties agreed with reference to the audit period under consideration that:

"During said period, some customers come into said Company Stores for the specific purpose of having new shock absorbers installed. Some customers come into said

Company Stores with the general knowledge and specific complaint that their automobiles are not riding smoothly, or that their tires are not wearing evenly, but without knowing that new shock absorbers are needed. Others come in for general automobile repair work and new shock absorbers are installed during the course of that general repair work."

**7.** *Pierce v. Pacini, supra* at Note 4, in construing the Illinois Retailers Occupation Tax Act formulated this rule: "When a customer contracts for the restoration of a motor vehicle's function and relies upon the experience and skill of the serviceman in the performance of this task, the serviceman is engaged in the sale of a service. If in the course of the repair it becomes necessary to replace a part, and the serviceman chooses the part and installs it, its transfer is incidental to the service. . . . On the other hand, when a customer purchases from a service station an item such as seat covers for his automobile and makes the selection and the sale does not obligate the seller to install them, then, even though the seller does install them, the transaction is a sale at retail, . . . ."

installation of shock absorbers was made by Firestone in the performance of lump-sum priced general repair service on customer automobiles, and that Firestone, as a necessary and incidental part of performing such service, incorporated its own shock absorbers into the vehicles being repaired. The trial court so found and such finding brings Firestone within the definition of a repairman. It follows that the Court of Civil Appeals mistakenly concluded that as a matter of law Firestone was not a statutory repairman under all circumstances shown by the record.

The judgment of the Court of Civil Appeals is reversed and the judgment of the trial court affirmed.

GREENHILL, C. J., not sitting.