TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-00-00183-CV







Carole Keeton Rylander, Successor-in-Interest to John Sharp, Comptroller of Public


Accounts of the State of Texas; and John Cornyn, Successor-in-Interest to 


Dan Morales, Attorney General of the State of Texas, Appellants



v.



Fisher Controls International, Incorporated, Appellee







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 201ST JUDICIAL DISTRICT


NO. 98-08893, HONORABLE CHARLES F. CAMPBELL, JR., JUDGE PRESIDING






 Carole Keeton Rylander, Comptroller of Public Accounts, and John Cornyn,
Attorney General (collectively the "Comptroller") appeal from a judgment awarded Fisher
Controls International, Inc. ("Fisher") in its suit to recover franchise taxes paid under protest for
the years 1992 and 1993. (1) We will affirm the judgment.


THE CONTROVERSY


 Fisher, a corporation organized and existing under the laws of Delaware,
manufactured in Texas certain valves and related instruments that Fisher sold to buyers in other
states during calendar years 1991 and 1992. The sales resulted from the efforts of Fisher's
representatives and independent contractors who solicited sales orders in the other states-orders
that Fisher approved in Texas before shipping the items from Texas to the buyers in the other
states. The present litigation arose from a dispute between Fisher and the Comptroller regarding
the proper franchise-tax treatment of the sums received by Fisher from these sales.


THE FRANCHISE TAX


 The franchise tax is imposed upon corporations for the privilege of transacting
business in Texas and is said to be justified by the benefits conferred upon corporations by the
state, including the opportunity to realize income and the protection afforded by Texas law. See
Bullock v. Nat'l Bancshares Corp., 584 S.W.2d 268, 270 (Tex. 1979). The tax is due and
payable annually.

 Before January 1, 1992, a corporation's net taxable capital was the sole basis for
computing the amount of franchise-tax liability. After that date and until the present, the tax has
been computed by applying specified statutory rates to a corporation's annual net taxable capital
and its annual net taxable earned surplus. See Tex. Tax Code Ann. §§ 171.001(a)(1), .002 (West
Supp. 2001).

 Net taxable capital consists of a corporation's stated capital (as defined in the Texas
Business Corporation Act) and its surplus (net corporate assets less stated capital), apportioned
to Texas as provided in section 171.106(a) of the Texas Tax Code, from which certain allowable
deductions are taken. Id. §§ 171.101(a), .106(a) (West 1992 & Supp. 2001).

 A corporation's net taxable earned surplus consists of its reportable taxable income
(for federal income-tax purposes) plus certain sums and less other amounts. The net sum, for
present purposes, must be apportioned to Texas as set out in tax-code section 177.106(b) to arrive
at the corporation's apportioned taxable earned surplus, from which any allowable deductions and
business losses are subtracted to produce the corporation's net taxable earned surplus. (2) Id.
§ 177.106(b) (West Supp. 2001).

 As indicated in the two preceding paragraphs, the tax code requires an
apportionment in the case of corporations doing an interstate business, both as to a corporation's
taxable capital and its net taxable earned surplus. See, e.g., Gen. Dynamics Corp. v. Sharp, 919
S.W.2d 861, 863-64 (Tex. App.-Austin 1996, writ denied).

 The apportionment of taxable capital and taxable earned surplus is governed by
section 171.106 of the tax code. With certain exceptions not material here, the apportionment
results from multiplying taxable capital and taxable earned surplus by a fraction, the numerator
of which is the corporation's gross receipts from business done in Texas and the denominator of
which is the corporation's total gross receipts. See Tex. Tax Code Ann. § 171.106(a), (b) (West
Supp. 2001).

 The calculation of gross receipts is governed in turn by other tax-code provisions,
one applicable to taxable capital and another applicable to taxable earned surplus. Because these
two tax-code provisions lie at the heart of the present controversy, we will set them out at length.

Taxable Capital



Sec. 171.103. Determination of Gross Receipts from Business Done in This State
for Taxable Capital


In apportioning taxable capital, the gross receipts of a corporation from its business
done in this state is the sum of the corporation's receipts from:


(1) each sale of tangible personal property if the property is delivered or shipped
to a buyer in this state regardless of the FOB point or other condition of the
sale, and each sale of tangible personal property shipped from this state to a
purchaser in another state in which the seller is not subject to taxation;


(2) each service performed in this state;


(3) each rental of property situated in this state;


(4) the use of a patent, copyright, trademark, or license in this state;


(5) each sale of real property located in this state, including royalties from oil,
gas, or other mineral interests; and


(6) other business done in this state.



Id. § 171.103 (West Supp. 2001) (emphasis added).

 Pursuant to the foregoing, the comptroller promulgated Rule 3.546, which provides
as follows:


Rule 3.546. Taxable Capital: Nexus.


(a) A foreign corporation is liable for the franchise tax if it is authorized to do
business in this state or if it is actually doing business in this state.


(b) A corporation is doing business in this state, for the taxable capital component
of the franchise tax, when it has sufficient contact with this state to be taxed
without violating the United States Constitution. A corporation may be
subject to the taxable capital component, but not subject to the earned surplus
component, because of Public Law 86-272. See § 3.554 of this title (relating 
to Earned Surplus: Nexus) for the nexus standards for the earned surplus
component of the franchise tax.



34 Tex. Admin. Code § 3.546 (2000). The rule sets forth, following the above, numerous actions
that constitute "doing business" in Texas, including "having employees, independent contractors,
agents, or other representatives in Texas . . . to promote or induce sales of [a] foreign
corporation's goods or services." Id. § 3.546(c)(4).

 After section 171.103 became effective in 1981, the Comptroller in 1988
promulgated Rule 3.549 in which he assigned meaning to the term "not subject to taxation" as
used in section 171.103(1). Rule 3.549 provides as follows:


Rule 3.549. Taxable Capital: Apportionment


(e) Treatment of specific items in computing gross receipts.


 * * * *


 (41) Tangible personal property. Examples of transactions involving the sale
of tangible personal property and which result in Texas receipts include,
but are not limited to, the following:


 * * * *


 (I) sales to which the throwback rule applies. For reports due on or
after October 2, 1984, each sale of tangible personal property
shipped from this state to a purchaser in another state in which the
seller is not subject to taxation (i.e., the throwback rule). This
subparagraph will control if it conflicts with any other provision of
this rule. Another state means a state of the United States, the
District of Columbia, Puerto Rico, or any territory or possession of
the United States. Subject to taxation means constitutional nexus. 
The seller need not pay tax to the other state; it only has to have
enough contact with the other state that the other state could tax the
seller. If the seller is doing business, has a certificate of authority,
or is incorporated in the other state, the seller is subject to taxation
in that state. Voluntarily collecting or paying tax to another state,
by itself, is not enough contact to make sales to the other state non-Texas receipts. A corporation which performs any of the activities
listed in Rule 3.546(c) concerning Taxable Capital: Nexus for
taxation of taxable capital in the other state will be considered
subject to taxation in the other state. The selling corporation must
have nexus in the other state during the accounting year upon which
the tax is based. The corporation has the burden of proving it is
subject to taxation in the other state. . . .



34 Tex. Admin. Code § 3.549(e)(41)(I) (2000) (emphasis added).

 The effect of Rule 3.549(e)(41)(I) is to make the actions set out in Rule 3.546(c)(4)
the measure of whether a corporation is doing business in a state other than Texas. It appears to
be undisputed that Fisher is doing business in the other states in the requisite sense.


Taxable Earned Surplus


 The legislature in 1991, for the first time, made a corporation's earned surplus a basis for
computing the Texas franchise tax. The concomitant gross-receipts provision was added to the
Tax Code as section 171.1032, to be effective January 1, 1992. The new statute provided as
follows:


Sec. 171.1032. Determination of Gross Receipts From Business Done in this State
for Taxable Earned Surplus


(a) In apportioning taxable earned surplus, the gross receipts of a corporation
from its business done in this state is the sum of the corporation's receipts
from:


 (1) each sale of tangible personal property if the property is delivered or
shipped to a buyer in this state regardless of the FOB point or another
condition of the sale, and each sale of tangible personal property shipped
from this state to a purchaser in another state in which the seller is not
subject to taxation;


 (2) each service performed in this state;


 (3) each rental of property situated in this state;


 (4) each royalty for the use of a patent or copyright in this state; and


 (5) other business done in this state.



Tex. Tax Code Ann. § 171.1032 (West 1992) (emphasis added).

 Section 171.1032 was itself amended in 1993 as discussed below. The pre-amendment version set forth above is, nevertheless, the law governing the 1992 and 1993
franchise-tax reports in dispute here.

 While the pre-amendment version of section 171.1032 was yet in effect, the
Comptroller promulgated Rule 3.554, which became effective March 16, 1992. Therein he
referred implicitly to the term "not subject to taxation" as used in section 171.1032(a)(1) of the
statute before its 1993 amendment:


Rule 3.554. Earned Surplus: Nexus.


(a) A foreign corporation is liable for the franchise tax if it is authorized to do
business in this state or if it is actually doing business in this state.


(b) A corporation is doing business in this state, for the earned surplus component
of the franchise tax, when it has sufficient contact with this state to be taxed
without violating the United States Constitution. A corporation may be
subject to the taxable capital component, but not the earned surplus
component, because of Public Law 86-272. See Rule 3.546 concerning
Taxable Capital: Nexus for the nexus standards for the taxable capital
component of the franchise tax.


(c) If the only business activity within this state is the solicitation of orders for
sales of tangible personal property, which orders are sent outside the state for
approval or rejection, and, if approved, are filled by shipment or delivery
from a point outside this state, then the corporation is not subject to the
earned surplus component of the franchise tax.



34 Tex. Admin. Code § 3.554(a) (1992) (emphasis added).

 A few months after adopting Rule 3.544, the Comptroller adopted Rule 3.557,
pertaining to the apportionment of earned surplus, to be effective November 13, 1992. The rule
provided as follows:


Rule 3.557. Earned Surplus: Apportionment


(e) Treatment of specific items in computing receipts:


 * * * *


 (37) Tangible personal property. Examples of transactions involving the sale
of tangible personal property and which result in Texas receipts include,
but are not limited to, the following:


 * * * *


 (I) sales to which the throwback rule applies. Each sale of tangible
personal property shipped from this state to a purchaser in another
state in which the seller is not subject to taxation (i.e., the
throwback rule). This subparagraph will control if it conflicts with
any other provision of this rule. Another state means a state of the
United States, the District of Columbia, Puerto Rico, or any
territory or possession of the United States. A corporation or
limited liability company is subject to taxation in another state if the
corporation or limited liability company is chartered or organized
in that state or has sufficient contact with that state so that a tax on
net income could be imposed on the corporation or limited liability
company without violating 15 United States Code, sec. 381 (i.e.,
Public Law 86-272). For reports originally due before January 1,
1993, the mere holding of a certificate of authority will establish
that a corporation or limited liability company was subject to
taxation in another state. Sales into another state where the seller
merely holds a certificate of authority will be treated as sales to
which the throwback rule applies, effective for reports originally
due on or after January 1, 1993. Voluntary payment of tax to
another state or the inclusion of a corporation or limited liability
company in another entity's state combined or consolidated income
tax return does not, by itself, cause the corporation or limited
liability company to be subject to taxation in another state. The
selling corporation or limited liability company must be subject to
taxation in the other state during the accounting year upon which
the tax is based. The corporation or limited liability company has
the burden of proving that it is subject to taxation in the other state
(See Rule 3.554).



34 Tex. Admin. Code § 3.557 (2000).

 Public Law 86-272, incorporated in Rules 3.554(a) and 3.557, prohibits a state's
imposition of a tax on net income derived within the state from interstate commerce if the only
business activity within the state is the solicitation of orders for tangible property by a
representative of the taxpayer or an independent contractor, when the orders are sent outside the
state for approval or rejection and, following approval, are filled by shipment or delivery from
a point outside the state. See 15 U.S.C.A. § 381 (West 1997).


The 1993 Amendment


 Section 171.1032 was amended in 1993, to be effective January 1, 1994, so that
after the amendment paragraph (a)(1) provided as follows:


[I]n apportioning taxable earned surplus, the gross receipts of a corporation from
its business done in this state is the sum of the corporation's receipts from:


(1) each sale of tangible personal property if the property is delivered or shipped
to a buyer in this state regardless of the FOB point or another condition of the
sale, and each sale of tangible personal property shipped from this state to a
purchaser in another state in which the seller is not subject to any tax on, or
measured by, net income, without regard to whether the tax is imposed;


 * * * *


Tex. Tax Code Ann. § 171.1032(a)(1) (West Supp. 2001) (emphasis added).

 The 1993 amendment left no doubt that the amended version of section 171.1032
was intended to be prospective only in its application. The amending act stated as follows: "This
Act takes effect January 1, 1994, and applies to a report originally due on or after that date." Act
of June 8, 1993, 73d Leg., R.S. ch. 546, § 13, 1993 Tex. Gen. Laws 2043, 2045 (emphasis
added). Thus, the amended version does not govern the 1992 and 1993 franchise-tax reports in
dispute here. The Comptroller contends, however, that the 1993 amendment is proof of what the
legislature intended by the term "subject to taxation" used in its original 1991 enactment of
section 171.1032, a contention we will discuss below.


DISCUSSION AND HOLDINGS


 Under section 171.103(1) and section 171.1032(a)(1) as it existed before January
1, 1994, Fisher was required to include in its Texas gross receipts any amounts received from
sales of tangible personal property to buyers in other states in which Fisher was not subject to
taxation. It appears undisputed that Fisher's sales to customers in the other states, through its
representatives and independent contractors, amounted to doing business in those states. 
Consequently, Fisher was subject to taxation in those states in the sense that the tax would not
offend the constitution of the United States. The parties refer to this as a constitutional nexus
between Fisher and the other states. See Rylander v. Bandag Licensing Corp., 18 S.W.3d 296,
298-99 (Tex. App.-Austin 2000, pet. denied). Even though some of the other states have not
actually imposed an income-based tax, this is immaterial in Fisher's view; those states could
impose such a tax under the Constitution because "constitutional nexus" was the only thing
sections 171.103(1) and 171.1032 contemplated. Therefore, it cannot be said that under those
statutes Fisher was "not subject to taxation" in those states. Consequently, Fisher included as part
of its total gross receipts those obtained from sales made in states that could have imposed an
income-based tax but did not do so. This enlarged the denominator of the apportionment fraction
and reduced the amount of Fisher's Texas franchise-tax liability.

 The Comptroller, on the other hand, contends Fisher was not subject to taxation
in the other states, in the words of section 171.103(1) and section 171.1032(a)(1) as they existed
before January 1, 1994, when those states could, but did not actually, impose an income-based
tax. The effect of this interpretation is that Fisher was required to include in its Texas gross
receipts amounts derived from sales in such other states. This interpretation of the statutory term
"not subject to taxation" enlarges the numerator of the apportionment fraction and thus increases
the amount of Fisher's franchise-tax liability.

 There can be no doubt as to the meaning of the adverb "not" and the noun
"taxation" as used in the statutory term "not subject to taxation." The key to understanding the
meaning of the term as a whole is, therefore, the intended meaning of the words "subject to."

 The Comptroller and Fisher both contend their antagonistic interpretations come
within the plain meaning of the words "not subject to taxation." We believe, however, that either
party's interpretation might reasonably and fairly come within the disputed language considered
in isolation.

 In common usage, the term "subject to" can mean to bring under dominion,
control, or authority (which tends to support Fisher's theory) or the term can mean to suffer a
particular liability or exposure (which tends to support the Comptroller's theory). See Webster's
Third New International Dictionary 2275 (Philip Babcock Gove, ed. 1986). We hold,
accordingly, that the statutory term "not subject to taxation" is ambiguous and therefore open to
construction, first by the Comptroller in the administrative process and then by the courts on
judicial review.

 In our attempt to find the intended meaning of the disputed statutory term, we are
mindful that the Code Construction Act erects a presumption that a just and reasonable result was
intended; and, the Act authorizes us to consider the objective sought to be obtained, former
statutory provisions, including laws on the same or similar subjects, and the consequences of a
particular construction of the disputed term. See Tex. Gov't Code Ann. § 311.023 (West 1998). 
We are forbidden to impose our own notions of public policy, such as the desirable scope of a
statute, but must instead determine the legislative purpose from a consideration of the statutory
scheme as a whole rather than from a literal application or interpretation of any particular
statutory language. See Citizens Bank v. First State Bank, Hearne, 580 S.W.2d 344, 348 (Tex.
1979); Calvert v. British-Amer. Oil Producing Co., 397 S.W.2d 839, 842 (Tex. 1965); Sexton v.
Mt. Olivet Cemetery Ass'n, 720 S.W.2d 129, 138 (Tex. App.-Austin 1986, writ ref'd n.r.e.);
Brown v. Patterson, 609 S.W.2d 287, 289 (Tex. Civ. App.-Dallas 1980, no writ). We are also
reminded that the Comptroller's administrative interpretation of ambiguous language in a revenue
statute is entitled to our respect and due weight. See Clark v. Atl. Pipe Line Co., 134 S.W.2d
322, 328-29 (Tex. Civ. App.-Austin 1939, writ ref'd); see generally Stanford v. Butler, 181
S.W.2d 269, 273 (Tex. 1944). We are not bound, however, by the Comptroller's interpretation. 
See Bullock v. Ramada Tex., Inc., 609 S.W.2d 537, 539 (Tex. 1980); Firestone Tire & Rubber
Co. v. Bullock, 573 S.W.2d 498, 500 n.3 (Tex. 1978); Citizens Nat'l Bank v. Calvert, 527
S.W.2d 175, 180 (Tex. 1975).

 We will first summarize the parties' respective arguments, as we understand them,
relative to the meaning proper to be assigned to the term "not subject to taxation" as used in the
pre-1994 version of section 171.1032(a)(1).


The Comptroller's Arguments


 In support of her position, the Comptroller argues as follows: The legislature
intends, in general, that the franchise tax shall extend "to the limits of the United States
Constitution and the federal law adopted" thereunder. Tex. Tax Code Ann. § 171.001(c) (West
Supp. 2001). From this, the Comptroller reasons that the legislature's 1991 enactment of section
171.1032, making taxable earned surplus a component of the franchise tax for the first time, had
the purpose of enhancing Texas state revenue and preventing multi-state income from escaping
state taxation altogether. See Rylander v. 3 Beall Bros. 3, Inc., 2 S.W.3d 562, 570 (Tex.
App.-Austin 1999, pet. denied); Rylander v. B & A Mktg., 997 S.W.2d 326, 334 (Tex.
App.-Austin 1999, no pet.).

 The Comptroller concedes that Rule 3.549(e)(41)(I), pertaining to the
apportionment of taxable capital, assigned to the disputed term "not subject to taxation" a meaning
contrary to that which she now assigns to the same statutory term used in section 171.1032(a)(1). 
She points out, however, that the same statutory term is used in different statutory contexts. 
Section 171.1032 (pertaining to the taxable earned-surplus component) includes an incorporation
of Public Law 86-272, which limits a state's power to tax corporate income as opposed to its
capital, while section 171.103 (construed in Rule 3.549(e)(41)(I) and pertaining to the taxable-capital component) does not refer at all to Public Law 86-272. Thus, it is reasonable for the
Comptroller to assign different meanings to the same statutory term ("not subject to taxation")
found in each of the two sections of the tax code.

 In the Comptroller's view, the 1993 amendment of section 171.1032(a)(1) decided
the controlling issue in the Comptroller's favor by adding the words "without regard to whether
the tax is imposed" by the other state. Conceding the 1993 amendment does not actually govern
the present case, because it was not effective until after Fisher's filing of the disputed franchise-tax reports for 1992 and 1993, the Comptroller argues that the 1993 amendment nevertheless
proves the legislature's 1991 intent in enacting section 171.1032(a)(1) containing the disputed term
"not subject to taxation": the term was intended to mean without regard to whether the tax was
actually imposed by the other state. The 1993 amendment was, according to the Comptroller,
merely a clarifying amendment not intended to change the law that had existed in the legislature's
mind since the original 1992 enactment of section 171.1032(a)(1). At least, the Comptroller
contends, the 1993 amendment is highly persuasive as to the legislature's 1991 intent. See Tex.
Water Comm'n v. Brushy Creek Mun. Util. Dist., 917 S.W.2d 19, 21 (Tex. 1996).

 The Comptroller argues finally that Rule 3.557, promulgated November 13, 1992,
to include Public Law 86-272 as a factor in judging whether corporate income is not subject to
taxation in the other state, is an administrative construction of the statutory term that is entitled
to great weight in our own attempt to ascertain the legislative intent that produced that ambiguous
term. See Stanford v. Butler, 181 S.W.2d at 274.


Fisher's Arguments


 Fisher contends the Comptroller's interpretation attempts to give retroactive force
and effect to the 1993 amendment of section 171.1032(a)(1), which gave statutory sanction to the
Comptroller's interpretation but declared explicitly and concurrently that the amendment would
apply only "to a [franchise-tax] report originally due on or after" January 1, 1994.

 Fisher next points out that the Comptroller's Rule 3.549, although strictly
applicable to the taxable-capital component alone, stated expressly that the term "subject to
taxation" meant constitutional nexus and that actual payment of an income-based tax was
unnecessary. This administrative interpretation of the term "subject to taxation" was presumably
in the legislature's mind when it employed the identical expression in its first enactment of section
171.1032, to be effective January 1, 1992; and, by utilizing the very same words "subject to
taxation," as adopted by the Comptroller in reference to taxable capital, the other component of
the franchise-tax calculation, the legislature must have intended the same words to have the same
meaning throughout the franchise-tax calculation.

 Referring to the Comptroller's Rule 3.554, dealing specifically with taxable earned
surplus, effective November 13, 1992, Fisher argues that the rule contemplates only that a
corporation may or may not be subject to actual taxation in another state, measured by income,
according to whether the corporation "has sufficient contact with the state to be taxed without
violating the United States Constitution," as stated in subsection (b) of the rule. And subsection
(c) of the rule provides only that "the corporation is not subject to the earned surplus component
of the franchise tax" if the corporation's only business activity in the other state "is the solicitation
of orders for sales of tangible personal property, which orders are sent outside the state for
approval or rejection, and if approved are filled by shipment or delivery from a point outside" the
state. 34 Tex. Admin. Code § 3.554(c) (emphasis added). In Fisher's view, this is not a
qualification or limitation of the constitutional nexus mentioned in subsection (b) but rather a
restriction against application of the earned-surplus component alone if such nexus exists. 
Subsection (c) does not mean, therefore, that the corporation is not subject to any income-based
tax in the circumstances described. That question must be determined according to subsection
(b)-the constitutional-nexus requirement.

 We believe the most important consideration, if not an overriding consideration,
is the legislature's 1993 enactment of section 171.1032(a)(1). This amendment added, in the most
explicit language, the very qualification for which the Comptroller now contends, stating expressly
that it is immaterial whether an income-based tax is actually imposed by the other state. 
Accompanying that declaration, the legislature also stated in no uncertain terms that its 1993
amendment "takes effect January 1, 1994, and applies to [franchise-tax] reports originally due on
or after that date." This implies in the strongest possible terms that the 1993 amendment may not
be applied retroactively to the franchise-tax reports in dispute in the present litigation-Fisher's
1992 and 1993 reports. It is equally clear that the Comptroller's position and supporting
arguments require that we apply retroactively to Fisher's 1992 and 1993 reports the full force and
effect of the 1993 amendment on a theory that the law laid down therein had always been the
meaning of section 171.1032(a)(1). If such had always been the law, then the legislature's
limiting the amendment to reports due after January 1, 1994, would be meaningless in our view. 
That theory flies in the face of the legislature's express prohibition as well as the ordinary
presumption against a retroactive application of a statute. See 3 Singer, Sutherland Statutory
Construction § 66.08, at 17 (6th ed. 2000). Concerning the Comptroller's argument that the 1993
amendment merely clarified what the legislature intended in its original enactment of section
171.1032(a)(1), then Fisher's 1992 and 1993 reports would necessarily have been subject to and
not expressly excepted from the clarification made in 1993. See City of Houston v. Clear Creek
Basin Auth., 589 S.W.2d 671, 681 (Tex. 1979); Am. Sur. Co. v. Axtell Co., 36 S.W.2d 715, 718
(Tex. 1931); Tex. Dep't of Banking v. Mt. Olivet Cemetery Ass'n, 27 S.W.3d 276, 285 (Tex.
App.-Austin 2000, pet. denied).

 Moreover, the Comptroller's argument requires that we assume the legislature, in
choosing the term "not subject to taxation" for use in section 171.1032(a)(1), enacted in 1991,
intended that the term should have a vastly different meaning from that assigned by the
Comptroller to the very same words in his 1988 adoption of Rule 3.549 only four years earlier. 
We reject that theory because we cannot impute to the legislature an intent to cause such confusion
of meaning in the two interwoven statutes by which franchise-tax liability is computed.

 Nor are we persuaded by the Comptroller's invocation of the legislature's general
intent and objective that the franchise tax should extend to the limits allowed by the United States
constitution and laws enacted thereunder, nor by her reliance upon the legislature's specific intent
that section 171.1032(a)(1) serve to enhance Texas state revenue. The legislature has enacted 
numerous statutory provisions providing for a reduced franchise-tax liability or an absolute
exemption from such liability in circumstances where the federal constitution and statutes would
apparently pose no barrier to a franchise tax. See, e.g., Tex. Tax Code Ann. §§ 171.055 (open-end investment companies), 171.056 (corporations with business interest in solar-energy devices),
171.059 (non-profit corporations organized to provide burial places), 171.069 (marketing
associations), 171.071 (farmers' cooperative societies), 171.074 (development corporations),
171.077 (credit unions), 171.085 (corporations engaged in recycling operations) (West 1992 &
Supp. 2001).

 Nor are we persuaded by the Comptroller's invocation of the rule of departmental
construction laid down in Stanford v. Butler, 181 S.W.2d at 273. This rule of statutory
construction does indeed find frequent application in cases of ambiguous statutory language, and
holds that courts should give serious consideration to the contemporaneous construction placed
upon the ambiguous language by an executive officer or department-the Comptroller in this
instance. See generally 2B Singer, Sutherland Statutory Construction §§ 49:01-:11, at 8-128
(6th ed. 2000). This rule of construction applies particularly to an agency's construction that is
sanctioned by long acquiescence, Stanford v. Butler, 181 S.W.2d at 273, but such is not the case
here. And it appears the Comptroller's construction of the term "subject to taxation," insofar as
it is said to be found in Rules 3.554 and 3.557, is itself ambiguous and uncertain as to what that
construction actually is; it plainly is not as clear, certain, and direct as the legislature's 1993
amendment of section 171.1032(a)(1) containing the proviso "without regard to whether the tax
is imposed." The Comptroller argues only that this very proviso is implied by the rules
mentioned, but the Comptroller fails to point to any part of the rules that naturally or logically
gives rise to the implication claimed. Interpretation by implication is permitted only to supply
obvious intent not expressly stated, and never to contradict or add to a statute. See
Commonwealth of Mass. v. United N. & S. Dev. Co., 168 S.W.2d 226, 229 (Tex. 1942); Sexton
v. Mt. Olivet Cemetery Ass'n, 720 S.W.2d at 138.

 Finally, the task of statutory construction does not here involve a matter lying
within agency expertise. It involves instead a non-technical question of law-legislative
intent-determined from the legislature's use of the term "not subject to taxation" in context and
based on the ordinary meaning of those words. Courts are as competent as the Comptroller in
making that assessment of legislative intent. This reduces considerably the degree of judicial
deference owed the Comptroller's interpretation. "Courts do not defer to administrative
interpretation in regard to questions which do not lie within administrative expertise, or deal with
a nontechnical question of law." 2B Singer, Sutherland Statutory Construction § 49.04, at 23-24.

 For the reasons given, we affirm the trial-court judgment.



 

 John E. Powers, Justice

Before Justices Patterson, Powers* and Jones; Justice Jones Not Participating

Affirmed

Filed: April 26, 2001

Publish










* Before John E. Powers, Senior Justice, (retired), Third Court of Appeals, sitting by
assignment. See Tex. Gov't Code Ann. § 74.003(b) (West 1998).
1. The judgment, rendered after a bench trial, orders that Fisher recover the sum of
$1,209,209.04 and statutory interest thereon from the date Fisher paid such sum under protest. 
The franchise-tax reports in dispute (1992 and 1993) are based on business done by Fisher in
calendar years 1991 and 1992.
2. Our descriptions of the various tax-code provisions are mere summaries of the statutes
in question. The actual tax-code provisions are more complex. The descriptions suffice,
however, for present purposes.



gislature has enacted 
numerous statutory provisions providing for a reduced franchise-tax liability or an absolute
exemption from such liability in circumstances where the federal constitution and statutes would
apparently pose no barrier to a franchise tax. See, e.g., Tex. Tax Code Ann. §§ 171.055 (open-end investment companies), 171.056 (corporations with business interest in solar-energy devices),
171.059 (non-profit corporations organized to provide burial places), 171.069 (marketing
associations), 171.071 (farmers' cooperative societies), 171.074 (development corporations),
171.077 (credit unions), 171.085 (corporations engaged in recycling operations) (West 1992 &
Supp. 2001).

 Nor are we persuaded by the Comptroller's invocation of the rule of departmental
construction laid down in Stanford v. Butler, 181 S.W.2d at 273. This rule of statutory
construction does indeed find frequent application in cases of ambiguous statutory language, and
holds that courts should give serious consideration to the contemporaneous construction placed
upon the ambiguous language by an executive officer or department-the Comptroller in this
instance. See generally 2B Singer, Sutherland Statutory Construction §§ 49:01-:11, at 8-128
(6th ed. 2000). This rule of construction applies particularly to an agency's construction that is
sanctioned by long acquiescence, Stanford v. Butler, 181 S.W.2d at 273, but such is not the case
here. And it appears the Comptroller's construction of the term "subject to taxation," insofar as
it is said to be found in Rules 3.554 and 3.557, is itself ambiguous and uncertain as to what that
construction actually is; it plainly is not as clear, certain, and direct as the legislature's 1993
amendment of section 171.1032(a)(1) containing the proviso "without regard to whether the tax
is imposed." The Comptroller argues only that this very proviso is implied by the rules
mentioned, but the Comptroller fails to point to any part of the rules that naturally or logically
gives rise to the implication claimed. Interpretation by implication is permitted only to supply
obvious intent not expressly stated, and never to contradict or add to a statute. See
Commonwealth of Mass. v. United N. & S. Dev. Co., 168 S.W.2d 226, 229 (Tex. 1942); Sexton
v. Mt. Olivet Cemetery Ass'n, 720 S.W.2d at 138.

 Finally, the task of statutory construction does not here involve a matter lying
within agency expertise. It involves instead a non-technical question of law-legislative
intent-determined from the legislature's use of the term "not subject to taxation" in context and
based on the ordinary meaning of those words. Courts are as competent as the Comptroller in
making that assessment of legislative intent. This reduces considerably the degree of judicial
deference owed the Comptroller's interpretation. "Courts do not defer to administrative
interpretation in regard to questions which do not lie within administrative expertise, or deal with
a nontechnical question of law." 2B Singer, Sutherland Statutory Construction § 49.04, at 23-24.

 For the reasons given, we affirm the trial-court judgment.



 

 John E. Powers, Justice

Before Justices Patterson, Powers* and Jones; Justice Jones Not Participating

Affirmed

Filed: April 26, 2001

Publish










* Before John E. Powers, Senior Justice, (retired), Third Court of Appeals, sitting by
assignment. See Tex. Gov't Code Ann. § 74.003(b) (West 1998).
1. The judgment, rendered after a bench trial, orders that Fisher recover the sum of
$1,209,209.04 and statutory interest thereon from the date Fisher paid such sum under protest. 
The franchise-tax reports in dispute (1992 and 1993) are based on business done by Fisher in
calendar years 1991 and 1992.
2. Our descriptions of the various tax-code provisions are mere summaries of the statutes
in question. The actual tax-code provisions are more complex. The descriptions suffice,
however, for present purposes.



gislature has enacted 
numerous statutory provisions providing for a reduced franchise-tax liability or an absolute
exemption from such liability in circumstances where the federal constitution and statutes would
apparently pose no barrier to a franchise tax. See, e.g., Tex. Tax Code Ann. §§ 171.055 (open-end investment companies), 171.056 (corporations with business interest in solar-energy devices),
171.059 (non-profit corporations organized to provide burial places), 171.069 (marketing
associations), 171.071 (farmers' cooperative societies), 171.074 (development corporations),
171.077 (credit unions), 171.085 (corporations engaged in recycling operations) (West 1992 &
Supp. 2001).

 Nor are we persuaded by the Comptroller's invocation of the rule of departmental
construction laid down in Stanford v. Butler, 181 S.W.2d at 273. This rule of statutory
construction does indeed find frequent application in cases of ambiguous statutory language, and
holds that courts should give serious consideration to the contemporaneous construction placed
upon the ambiguous language by an executive officer or department-the Comptroller in this
instance. See generally 2B Singer, Sutherland Statutory Construction §§ 49:01-:11, at 8-128
(6th ed. 2000). This rule of construction applies particularly to an agency's construction that is
sanctioned by long acquiescence, Stanford v. Butler, 181 S.W.2d at 273, but such is not the case
here. And it appears the Comptroller's construction of the term "subject to taxation," insofar as
it is said to be found in Rules 3.554 and 3.557, is itself ambiguous and uncertain as to what that
construction actually is; it plainly is not as clear, certain, and direct as the legislature's 1993
amendment of section 171.1032(a)(1) containing the proviso "without regard to whether the tax
is imposed." The Comptroller argues only that this very proviso is implied by the rules
mentioned, but the Comptroller fails to point to any part of the rules that naturally or logically
gives rise to the implication claimed. Interpretation by implication is permitted only to supply
obvious intent not expressly stated, and never to contradict or add to a statute. See
Commonwealth of Mass. v. United N. & S. Dev. Co., 168 S.W.2d 226, 229 (Tex. 1942); Sexton
v. Mt. Olivet Cemetery Ass'n, 720 S.W.2d at 138.

 Finally, the task of statutory construction does not here involve a matter lying
within agency expertise. It involves instead a non-technical question of law-legislative
intent-determined from the legislature's use of the term "not subject to taxation" in context and
based on the ordinary meaning of those words. Courts are as competent as the Comptroller in
making that assessment of legislative intent. This reduces considerably the degree of judicial
deference owed the Comptroller's interpretation. "Courts do not defer to administrative
interpretation in regard to questions which do not lie within administrative expertise, or deal with
a nontechnical question of law." 2B Singer, Sutherland Statutory Construction § 49.04, at 23-24.

 For the reasons given, we affirm the trial-court judgment.



 

 John E. Powers, Justice

Before Justices Patterson, Powers* and Jones; Justice Jones Not Participating

Affirmed

Filed: April 26, 2001

Publish










* Before John E. Powers, Senior Justice, (retired), Third Court of Appeals, sitting by
assignment. See Tex. Gov't Code Ann. § 74.003(b) (West 1998).
1. The judgment, rendered after a bench trial, orders that Fisher recover the sum of
$1,209,209.04 and statutory interest thereon from the date Fisher paid such sum under protest. 
The franchise-tax reports in dispu